**373 A.2d 807.**

ARMAND G. AMBEAULT *vs.* BURRILLVILLE RACING ASSOCIATION *d.b.a.* LINCOLN DOWNS RACETRACK.

MAY 24, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. On January 29, 1973, Armand G. Ambeault went to the horseraces. What ensued thereafter may bring a tear to the eye or smile to the face of any given individual depending upon his particular proclivity for or against the world of the pari-mutuel bettor. Ambeault purchased tickets for the "daily double" at Lincoln Downs Racetrack. For the first race he chose a thoroughbred called Wawa Ducey. For the second race he chose every horse in the field, combining them with Wawa on his respective ticket purchases.[1]

---

[1] At oral argument Ambeault told us that this betting technique is known as "wheeling." Ostensibly then Wawa was the hub and the other horses in the second race the spokes. Webster's Third International Dictionary (1971 ed.) tells us that "daily double" is "a system of betting

To Ambeault's undoubted delight, Wawa Ducey crossed the finish line first. With victory apparently well within his grasp, Ambeault was awaiting only the finish of the second race and the tote board's flash of the payoff when all his expectations became just another one of a horse-player's shattered dreams. As noted earlier, the day's racing was taking place in late January 1973. Sometime after the completion of the first race, the public address system carried a message which told the patrons that the remaining races were being cancelled because the jockeys refused to imperil themselves and their steeds on the track's frozen surface.

In light of the cancellation, the track offered to refund to all holders of "daily double" tickets a share of the pool, which amounted to $23,278. Each share was determined by the total cost of the tickets purchased by each bettor. Ambeault refused the offer and instituted the present suit.[2]

Ambeault commenced this litigation as a class action in the Superior Court, suing as the defendant the owner and operator of Lincoln Downs, the Burrillville Racing Association. His claim is based upon the theory that the refund offer is a breach of a valid contract between himself and the track. An examination of his pleadings indicates that Ambeault contends that the distribution offer also

on horse or dog races in which the bettor must pick the winners of two stipulated races in order to win, such bets forming a pool separate from the ordinary bets."

[2] In support of its motion to dismiss, the track presented an affidavit of its auditor. The auditor reported that refunds were made on 770 $10 tickets and 7,449 $2 tickets, and that the track paid a total of $22,598 to satisfy these claims, leaving a balance in the pool of $680. The auditor also averred that in June, 1974 the track, while acting in accordance with the rules of the Commission on Horse Racing and Athletics and G.L. 1956 (1969 Reenactment) §41-4-10, paid the balance of the pool to Rhode Island's General Treasurer.

violates the Rules of Horse Racing promulgated by the Rhode Island Commission on Horse Racing and Athletics. The Superior Court, on Burrillville's motion, dismissed Ambeault's complaint because he had failed to exhaust his administrative remedies. We affirm but for reasons somewhat different from those expressed by the trial justice.

Initially, we think the contractual status of the litigants should be clarified. In her decision the trial justice ruled that there was no contract between the racetrack and Ambeault. In taking this position, she relied on a line of New York cases, one of which notes that there is "no wagering contract, agreement or bet between the Racing Association and the patron. The transaction is between the participants in the pari-mutuel pools, the odds and terms thereof being determined by the participants according to the amount of their payments into the pool." *Holberg* v. *Westchester Racing Ass'n,* 184 Misc. 581, 583, 53 N.Y.S.2d 490, 493 (1945). That there is not a *wagering* contract directly between Ambeault and the track is true; the track has guaranteed no specific payout should Ambeault win — that is entirely dependent upon the amount of the pool and the number of winners.

However, there is a contractual relationship between the track and Ambeault. *Wise* v. *Delaware Steeplechase & Race Ass'n,* 28 Del. Ch. 532, 45 A.2d 547 (1945). The track is contractually bound to distribute to any winner the share of the pool to which he is statutorily entitled. *Shapiro* v. *Queens County Jockey Club,* 184 Misc. 295, 53 N.Y.S.2d 135 (1945). It is also clear that a winning ticket holder may institute an action at law against the "stakeholder" for its refusal to pay the winner the balance due to him. *Ballin* v. *Los Angeles County Fair,* 43 Cal. App.2d Supp. 884, 111 P.2d 753 (1941); *Feeney* v. *Eastern Racing*

*Ass'n,* 303 Mass. 602, 22 N.E.2d 259 (1939); *see* Annot., 165 A.L.R. 838, 843 (1946).

When, however, the racing association has paid to the bettor what it is required to pay under the prevailing statutory rules and regulations, its liability is at an end. *Shapiro* v. *Queens County Jockey Club, supra* at 298, 53 N.Y.S.2d at 137. Such is the case before us. Rule 390(1) of the Rules of Horse Racing provided:

> "If, for any reason, the first race of a Daily Double, or if, for any reason, the second race of a Daily Double, is cancelled or declared 'no race,' full and complete refund shall be made of the Daily Double pool."

In accordance with this rule, Lincoln Downs distributed the pool among all the "daily double" ticket holders, regardless of whether or not they had Wawa Ducey in the first race. Ambeault contends that only those ticket holders who had Wawa Ducey should be entitled to share in the "daily double" pool.[3]

Clearly, then, Ambeault's grief is not with the track but with the rule under which the refund payments were made. Lincoln Downs had no alternative other than to comply with the rule. Consequently, the track was entitled to a dismissal of Ambeault's complaint.

However, the trial justice rested the dismissal on Am-

---

[3]Interestingly, the commission later amended Rule 390(1) to conform with Ambeault's contention. The rule now reads:

"If for any reason the first race of a Daily Double is cancelled and declared off, full and complete refund will be made of the Daily Double Pool.

"If the second race of the Daily Double is cancelled or declared off, the entire Daily Double pool shall be distributed as a win pool to the holders of winning tickets on the first half of the Daily Double. If there are no such holders, the pool shall be distributed as a win pool to the holders of second place horses in the first half of the Daily Double."

beault's failure to exhaust his administrative remedies and, in doing so, referred to those portions of G.L. 1956 (1969 Reenactment) ch. 2 of title 41 which provide for an appeal by any person aggrieved by any order or decision of the commission. Here we are dealing with a rule which has been promulgated by the commission pursuant to the rulemaking power conferred upon it by §41-3-9. The Legislature has provided a vehicle for administratice relief in such circumstances. It is to be found in the Administrative Procedures Act, specifically §42-35-8. The statute permits an individual to petition an agency and ask for a declaratory ruling as to the applicability of the agency's rule to the petitioner's particular circumstances. We would point out, however, that if Ambeault took this route, it would have been a fruitless trip because the rule, rather than being ambiguous, is crystal clear and certainly encompassed within its terms all those, including Ambeault, who purchased "daily double" tickets on that cold, wintry day in January 1973. Thus it is that we affirm the dismissal not on Ambeault's failure to seek administrative assistance, but on the principle that because of the express language of the rule, Lincoln Downs had no choice but to obey its provisions.

The plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Armand G. Ambeault,* pro se, plaintiff.

*Hanson, Curran, Bowen & Parks, William A. Curran, Michael T.F. Wallor,* for defendant.