### GREENWICH BAY YACHT BASIN ASSOCIATES

v.

### Donald BROWN et al.

### No. 86–167–A.

Supreme Court of Rhode Island.

Feb. 26, 1988.

John Tarantino, Providence, for plaintiff.

Alan J. Goldman, Goldman & Biafore, Christophe Little, Tillinghast, Collins & Graham, Dennis W. Nixon, Marine Affairs, URI, Providence, for defendants.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment entered in the Superior Court pursuant to a petition for mandamus and other relief filed by the plaintiff, Greenwich Bay Yacht Basin Associates (Greenwich), against members of the Coastal Resources Management Council (CRMC) subcommittee. Also parties to this dispute are Save The Bay, Inc., and Rhode Island Shellfishermen's Association, who were intervenors before the CRMC subcommittee and also before this court. Although Greenwich filed a petition for writ of mandamus, it also sought equitable relief and generally set forth allegations, which if supported, would make out a case of equitable estoppel against the CRMC subcommittee on the ground that its application should have been processed and judged under 1978 program regulations as opposed to modified regulations promulgated in 1983. The Superior Court rejected the petition for mandamus but granted judgment on the ground of equitable estoppel, ordering the CRMC subcommittee to process and adjudicate the application under the 1978 program. We vacate and remand. The facts as set forth in the petition for mandamus and claim for equitable relief are as follows.

On March 15, 1983, Greenwich filed an application with CRMC that sought approval of a proposed development and construction of fifty-two, two-bedroom condominium units, a clubhouse, and a 200–boat

marina. At the time of the filing of this application, CRMC was utilizing a set of criteria known as the 1978 program. In June 1983 CRMC promulgated new criteria (1983 program). On April 15, 1985, Greenwich filed a revised application, which reduced the proposal as originally submitted in 1983 from a 200–boat marina to a 55–boat marina. This revision resulted from certain rulings of state administrative agencies, other than CRMC, with respect to water quality and other requirements.

Affidavits attached to the complaint filed in Superior Court indicated that members of the staff of CRMC had repeatedly assured Greenwich that its revised application would be judged and processed in accordance with the 1978 program. The petition for mandamus and equitable relief was supplemented by affidavits of Wayne Allinson, an engineer engaged by Greenwich for the project; James Beattie, chief of the Coastal Resources Division of the Department of Environmental Management; Nicholas A. Pisani, a professional engineer employed by the Coastal Resources Division; and Linda Steere, a staff biologist employed by the Department of Environmental Management. All these affidavits stated without equivocation that assurances had been given that the Greenwich application would be reviewed and adjudicated in accordance with the 1978 program. Moreover, in a separate affidavit James Beattie also set forth that an examination of CRMC records indicated that eighty-four applications had been filed with CRMC prior to enactment of the 1983 program and were nevertheless processed by the CRMC after its enactment according to the 1978 program. A total of forty-three assent requests were filed after the application of Greenwich and were processed under the 1978 program. Mr. Allinson's affidavit set forth that as recently as October 25, 1985, three days prior to the scheduled hearing before the CRMC subcommittee, he met with Mr. Pisani and Ms. Steere, who again confirmed that the application would be processed and judged by the CRMC 1978 program.

As a consequence, counsel for Greenwich prepared expert witnesses for presentation at the hearing to be held October 28, 1985. For the first time on the evening of October 28, 1985, just prior to the beginning of the hearing, the subcommittee chairperson suggested that the application be judged under the 1983 plan. Thereupon the subcommittee requested that all interested parties file legal memoranda concerning the issue of whether the 1978 or the 1983 program criteria should be controlling. Following the filing of memoranda by Greenwich and by the intervenors, a decision was rendered on December 5, 1985, that the 1983 program criteria would be used in judging the application of Greenwich. At this point counsel for Greenwich informed the subcommittee that he could not proceed under the 1983 criteria, that his expert witnesses were prepared to testify pursuant to the 1978 program, and that in his opinion under the 1983 criteria, the application would be doomed to failure. As a consequence, he informed the subcommittee that he would not proceed further with the application before the administrative agency, but would take necessary steps to seek relief from the Superior Court.

In due course a petition for mandamus and other equitable relief was filed in that court, and the assignment judge, upon examining the petition for mandamus, considered that it could be adjudicated without an evidentiary hearing. The justice to whom the case was ultimately assigned considered the memoranda filed by Greenwich and also by the intervenors, and after reviewing the legal memoranda together with the affidavits filed in support of the petition for relief, he determined that the petition for mandamus must be denied but that Greenwich was entitled to relief based upon the principles of equitable estoppel. The trial justice held that mandamus did not lie because Greenwich did not have a clear legal right to have the 1978 program applied, nor did CRMC have a ministerial legal duty to perform without discretion to refuse to do so. The trial justice went on to find that CRMC was estopped from applying the 1983 regulations.

The court found as a fact that an application was filed with CRMC on March 15,

1983, and that at the time of that filing, the 1978 program was in effect. The court further found that on April 15, 1985, Greenwich filed a revised application that reduced the proposal as originally submitted in 1983 from a 200–boat marina to a 55–boat marina. This was done as a direct result of certain rulings of state administrative agencies with respect to water quality. The court further found that Greenwich could not prevail if this matter were to proceed under the 1983 regulations. "It would be an exercise in futility for them to present their case before the Subcommittee under those Rules and Regulations." He found that Greenwich had always been advised by members of the CRMC staff that the application would, in fact, be processed and judged pursuant to the 1978 program, that Greenwich had expended substantial sums of money for application fees, expert-witness fees, construction, architectural, engineering, and legal fees, as well as carrying costs for the project. These facts were determined from an affidavit of Thomas L. DeFelice, a general partner in Greenwich, as well as the affidavits of Wayne Allinson, James Beattie, Nicholas Pisani, and Linda Steere.

It should be noted that the findings of fact made by the trial justice were based upon affidavits filed as indicated and that there was no testimony taken in support of or in opposition to the complaint which Greenwich filed in the Superior Court. In support of their appeal, CRMC and the intervenors raise a number of issues, but they do agree with the trial justice that mandamus was properly denied.

 There seems to be no question that a petition for mandamus was not an appropriate form of relief in the circumstances of this case. We have frequently stated that mandamus will lie only in circumstances wherein the party to whom the writ is directed has a ministerial, legal duty to perform such act without discretion to refuse. *Wood v. Lussier*, 416 A.2d 690 (R.I. 1980); *McKinnon v. Housing Authority of Pawtucket*, 114 R.I. 686, 338 A.2d 517 (1975); *Aniello v. Marcello*, 91 R.I. 198, 162 A.2d 270 (1960). It is clear that mandamus will not compel an officer to do a discretionary act. In the case at bar, the application of principles of equitable estoppel, whether directed to the Superior Court or to the administrative agency, would require an exercise of discretion. There would be a determination of such matters as the amount of reliance upon assurances previously given that had been made by the applicant, the justification of said reliance, the authority or apparent authority of agents of CRMC, who may have given such assurance, and also the question of the public interests that might have to be weighed against the equitable entitlement of Greenwich to relief. *See Lerner v. Gill*, 463 A.2d 1352 (R.I. 1983). Consequently the trial justice was correct in denying the petition for mandamus.

 The intervenors and CRMC object vigorously to the granting of relief to Greenwich on the ground of equitable estoppel. All parties recognize that this court has applied the doctrine of equitable estoppel against administrative and municipal authorities under circumstances where justice would so require. *See, e.g., Loiselle v. City of East Providence*, 116 R.I. 585, 359 A.2d 345 (1976); *Schiavulli v. School Committee of North Providence*, 114 R.I. 443, 334 A.2d 416 (1975); *Ferrelli v. Department of Employment Security*, 106 R.I. 588, 261 A.2d 906 (1970). Our prior cases recognize the doctrine of equitable estoppel and the fact that said doctrine may be applied to a governmental authority as well as a private party when appropriate circumstances and principles of equity so require, *Town of Glocester v. Olivo's Mobile Home Court, Inc.*, 111 R.I. 120, 300 A.2d 465 (1973). It is also apparent from the foregoing cases that this relief is extraordinary and will not be applied unless the equities clearly must be balanced in favor of the parties seeking relief under this doctrine. Under this general standard, an examination of the complaint filed by Greenwich could well lead to the conclusion that if all the allegations set forth in the complaint and set forth in the affidavits filed as supplemental thereto were supported by competent evidence, there would be an adequate basis for the application of

the doctrine of equitable estoppel. However, it also must be borne in mind that in the posture in which this case was presented to the Superior Court, no opportunity was afforded intervenors or defendants to cross-examine the affiants or to present testimony in opposition to the allegations set forth in the affidavits. Particularly there was no evidence presented in support of the conclusory allegations set forth in the DeFelice affidavit. Thomas L. DeFelice averred in his affidavit that Greenwich "has expended substantial sums of money for development, architectural, engineering and legal fees as well as expert witness fees and carrying costs for the subject property." Mr. DeFelice went on to state that he would not have expended such sums except for the numerous representations made by CRMC staff members that the application would be processed under the 1978 program. An examination of this rather brief affidavit makes it abundantly clear that the allegations concerning the expenditure of "substantial sums" are entirely conclusory. There are no facts from which a trier of fact could find that these sums were sufficiently substantial to warrant the application of the doctrine of equitable estoppel.

One may look for guidance to prior cases in which zoning ordinances were amended after building permits were issued. For example, in *Tantimonaco v. Zoning Board of Review of Johnston*, 102 R.I. 594, 232 A.2d 385 (1967), a question was raised about the application of equitable principles in light of the fact that a zoning ordinance had been amended after a permit had been issued to an applicant for a special exception to construct a gasoline station. Under the amended ordinance no such special exception could be granted. This court had after an earlier hearing remanded the case to the zoning board of review in order to determine whether expenditures of a sufficiently substantial nature had been incurred in reliance on the permit in good faith. *Tantimonaco v. Zoning Board of Review of Johnston*, 100 R.I. 615, 218 A.2d 480 (1966). The zoning board thereafter held an evidentiary hearing and came to the conclusion that the applicants had incurred substantial expenses in reliance upon the issuance of the permit and thereby determined that it was inequitable to deprive the applicant of the right that apparently had been conferred upon him by the building permit previously issued pursuant to permission granted by the board. This case involved the application of a principle that had been earlier enunciated in *Shalvey v. Zoning Board of Review of Warwick*, 99 R.I. 692, 210 A.2d 589 (1965). The doctrine set forth in *Shalvey* was expressed as follows:

> "It is * * * our opinion that building permits lawfully issued for a permitted use should be immune to impairment or revocation by reason of a subsequent amendment to the zoning ordinance when the holders thereof, acting in reliance thereon in good faith, initiate construction in some reasonably substantial measure or incur some reasonably substantial obligation promoting such construction." *Id.* at 699, 210 A.2d at 593–94.

The court went on to say most significantly that application of the rule thus laid down, however, obviously called for a factual determination of "the extent to which substantial performance was undertaken in reliance on the permit in good faith." *Id.* at 700, 210 A.2d at 594.

It seems to us that the doctrine laid down in *Tantimonaco* and *Shalvey* would be applicable to the instant case, even though we are dealing here with a change in program criteria as opposed to an amendment to a zoning ordinance. The principles, nevertheless, are very closely parallel. It should be noted that in both the *Tantimonaco* and *Shalvey* cases the administrative agency, namely, the zoning board of review, constituted the fact-finding tribunal. In the instant case, the Superior Court undertook to make a factual determination, although it did not have before it a sufficient evidentiary basis upon which such findings might have been made.

■ It is also a familiar doctrine in our cases that one may not seek judicial relief when one has not exhausted administrative

remedies given by statute. *Jacob v. Burke*, 110 R.I. 661, 296 A.2d 456 (1972); *A & B Holding Co. v. Zoning Board of Review of Johnston*, 101 R.I. 465, 224 A.2d 608 (1966). However, it is also recognized that exhaustion of administrative remedies will not be required when those remedies are inadequate and may result in a futile exercise. *See Rhode Island Chamber of Commerce v. Hackett*, 122 R.I. 686, 411 A.2d 300 (1980); *Ambeault v. Burrillville Racing Association*, 118 R.I. 310, 373 A.2d 807 (1977).

It would obviously have been an exercise in futility to require Greenwich to go forward with the presentation of evidence in support of its application under the 1983 criteria when Greenwich concedes at the outset that it would be unable to meet these criteria. To suggest that Greenwich should be required under the doctrine of exhaustion of administrative remedies to present a case that is foredoomed would be both unjust and unreasonable. It has, however, been suggested that Greenwich did have an obligation to file a petition and seek a declaratory ruling from the full membership of CRMC pursuant to the provisions of G.L. 1956 (1984 Reenactment) § 42–35–8. Presumably, such a petition could have been limited to the question of whether the 1978 or the 1983 program criteria would be utilized in adjudicating Greenwich's application. Such a ruling would have the same effect as agency orders in contested cases and therefore would be subject to appeal to the Superior Court under § 42–35–15. We are of the opinion that such a course would have been appropriate in the instant case. However, Greenwich was obviously of the opinion that the subcommittee before which it appeared had the intention of requiring it to put in its case under the 1983 criteria on December 5, 1985. We have already indicated that such a course would have been futile.

In light of the conflicting positions taken by the parties, we believe that this court should fashion a series of procedures that would be compatible with § 42–35–8 but which would at the same time allow Greenwich to present its evidence in respect to the doctrine of equitable estoppel. Consequently, we shall authorize Greenwich to file a petition for a declaratory ruling with CRMC. When said petition is filed, CRMC is directed to permit Greenwich to present evidence in support of its claim that it would be inequitable to apply the 1983 criteria in the adjudication of its application. Other interested parties may participate in the evidentiary hearing and may, if they see fit, oppose said petition. The petition shall be heard expeditiously by CRMC as § 42–35–8 requires. Either party aggrieved by the declaratory order entered by CRMC may appeal directly to the Superior Court from such ruling under the provisions of § 42–35–15.

Since we have authorized the foregoing remedy, further pursuit of the petition for mandamus and equitable relief in the Superior Court will be unnecessary and inappropriate. However, upon remand to the Superior Court, a judgment will enter dismissing the petition without prejudice to Greenwich to file a petition with CRMC for a declaratory ruling. The Superior Court will incorporate the directions of this court to CRMC in said judgment.

For the reasons stated and in light of the alternative remedy provided, the appeal of the defendants and the intervenors is sustained. The judgment of the Superior Court is vacated. The papers in the case are remanded to the Superior Court for entry of judgment in accordance with this opinion.