John J. POWER, Jr., et al.

v.

CITY OF PROVIDENCE et al.

No. 89–274–Appeal.

No. 89–341–M.P.

Supreme Court of Rhode Island.

Nov. 28, 1990.

Marc B. Gursky, Providence, for plaintiffs.

Michael K. Marran, Charles S. Kirwan, Rodio & Ursillo, Ltd., Providence, for intervenors.

Edward C. Clifton, City Sol., and Richard M. Peirce, Roberts, Carroll, Feldstein & Peirce, Inc., Providence, for defendant.

Before FAY, C.J., and KELLEHER, WEISBERGER, MURRAY and SHEA, JJ.

## OPINION

MURRAY, Justice.

The petitioner/defendant, Local No. 799, International Association of Firefighters (Union), is petitioning for certiorari to review a denial of its motion for summary judgment and is appealing the grant of a preliminary injunction in favor of the plaintiffs John J. Power, Jr., et al. (collectively, Power).[1]

This case involves the mandatory retirement at age sixty of Providence fire and police personnel, pursuant to the Providence Retirement Act, P.L.1923, ch. 489, as amended by P.L.1968, ch. 146(act). The act states that all class-B employees of the city of Providence (that is, police and fire personnel) must retire at age sixty regardless of an individual employee's ability to continue performing in his or her current

---

1. The other plaintiffs are Robert Emmett, Edmund R. Calcagni, William E. Francis, Rudolph Famigletti, and John J. O'Connor.

position.[2] The plaintiffs are all Providence police officers who were over the age of sixty at the time of commencing this suit on February 22, 1989, but who had not yet been forced to retire. Power commenced this suit,[3] seeking to enjoin enforcement of the act, relying on four grounds: that enforcement would violate a 1984 "Negotiated Settlement Agreement" (settlement agreement) between the city of Providence Police Department (police department) and a party unrelated to this suit; that enforcement would violate the Rhode Island Fair Employment Practices Act (FEPA), G.L. 1956 (1986 Reenactment) chapter 5 of title 28; and that enforcement would violate the Federal and Rhode Island Constitutions' Equal Protection and Due Process Clauses. Union successfully intervened in this suit as a party defendant. Thereafter, Power moved for a preliminary injunction, to which Union was the only defendant in opposition. Union in turn moved for summary judgment, claiming that none of Power's four counts states a claim upon which relief may be granted.[4] On May 24, 1989, the trial court denied Union summary judgment on the basis that material questions of fact exist with respect to all of Power's claims, and it granted Power a preliminary injunction against being forced to retire.

Before discussing the merits of the parties' respective motions, we must first recite some of the separate but related litigation concerning the act. Sometime in the early 1980s one Walter M. Campbell (not a party to the present suit) apparently alleged that the police department engaged in age discrimination in violation of FEPA and the Federal Age Discrimination in Employment Act of 1967. That matter was resolved before the Rhode Island Commission for Human Rights (commission) by the settlement agreement. The settlement agreement was dated March 16, 1984, and was signed by Campbell and the attorney for the police department. "Specific Provisions 1" of the settlement agreement states that the police department:

> "agrees not to force [Campbell] or any of its employees to retire before age 70 unless it is determined that they are unable to perform their job duties. In this same spirit, [the police department] will require tests of the physical fitness of its employees to perform the essential functions of their jobs and those employees who cannot, with reasonable accommodation, perform their jobs will be dismissed."

Apparently pursuant to this settlement agreement, from 1984 to 1987 the police department did not act in accordance with the act, which required the retirement of police department personnel over the age of sixty. In 1987, Union instituted a mandamus action (not the present action) in the Superior Court against the Retirement Board of the City of Providence (retirement board) to compel the board to comply with the act and to retire police personnel over

---

**2.** Public Laws 1968, ch. 146, § 6 amended P.L. 1923, ch. 489, § 9(1), so that § 9(1) now reads:

"(b) Each class B member who has attained the age of sixty, and each class B member who attains the age of sixty, shall be retired forthwith, or on the first day of the calendar month next succeeding that in which the said member shall have attained the age of sixty years.

Any class B member, who on October 1, 1968 has attained the age of fifty-six years may continue in service for a period of five (5) years; but in no event after the first day of the calendar month next succeeding that in which he shall have attained the age of sixty-five years."

**3.** The original defendants are the city of Providence; Joseph R. Paolino, in his official capacity as mayor of the city of Providence and chairman of the retirement board; Charles A. Pisaturo in his official capacity as commissioner of public safety for the city of Providence; Colonel Walter J. Clark, in his official capacity as chief of police for the city of Providence; Stephen T. Napolitano, in his official capacity as treasurer for the city of Providence; Retirement Board of the City of Providence; and John Does, in their official capacities as members of the retirement board.

**4.** Union's motion was actually a motion to dismiss under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. However, the trial justice states that he considered materials outside of the pleadings and that therefore he treated Union's motion as a motion for summary judgment under Rule 56. *See Steinberg v. State,* 427 A.2d 338, 339 n.2 (R.I. 1981).

the age of sixty. The Superior Court issued the mandamus order, stating:

> "This act [Providence Retirement Act] unmistakenly imposes a duty on the Retirement Board to retire those 'Class B' members who have attained the age of sixty (60) or more.
>
> " * * *
>
> "[I]t seems evident that [the retirement board] have a ministerial legal duty to retire those 'Class B' members of the retirement system who have attained the age of sixty (60) years or more and that plaintiffs [Union] have a clear legal right to have such legal action taken."

Although many issues were discussed in the trial justice's decision, it does not appear that the parties to that suit litigated the enforceability of the act in light of the 1984 settlement agreement. The trial justice's decision was appealed to the Rhode Island Supreme Court (No. 88–221–A), and on January 11, 1989, this court affirmed the trial justice's issuance of the writ of mandamus.

In February of 1989 this suit was commenced by Power and certain other Providence police officers threatened with retirement on account of the Supreme Court's 1989 decision. Power raises issues not litigated in the prior actions: the constitutionality of the act; the enforceability of the act in light of the 1984 settlement agreement; and the enforceability of the act in light of the State Fair Employment Practice Act.

## I. *Motion for Summary Judgment*

With respect to Union's motion for summary judgment, the standard of review that we undertake is to determine whether there exists any genuine issue of material fact such that judgment should not enter as a matter of law. *Russo v. Cedrone*, 118 R.I. 549, 555, 375 A.2d 906, 909 (1977).

## A. *Rhode Island Fair Employment Practice Act*

■ Employers are prohibited by § 28–5–7(1)(B), as amended by P.L.1987, ch. 494, § 1, from discharging or discriminating against an employee on the basis of age.[5] Union alleges that FEPA was not violated in this case by virtue of G.L.1956 (1988 Reenactment) § 43–3–26, which states:

> "Conflicting general and special provisions.—Wherever a general provision shall be in conflict with a special provision relating to the same or to a similar subject, the two (2) provisions shall be construed, if possible, so that effect may be given to both; and in those cases, if effect cannot be given to both, the special provision shall prevail and shall be construed as an exception to the general provision."

Union claims that the act is a "special act" within the terms of § 43–3–26. *See Police and Firefighter's Retirement Ass'n of Providence v. Norberg*, 476 A.2d 1034, 1036 (R.I.1984) (third time P.L.1923, ch. 489, has been construed as a special act under § 43–3–26); *see also Linnane v. Clark*, 557 A.2d 477, 479 (R.I.1989). By distinction, Union characterizes FEPA as a "general" law. Therefore, applying the rule of statutory construction as provided by § 43–3–26, the act is valid law and is not unlawful age discrimination as prohibited by FEPA. Union also relies on G.L.1956 (1988 Reenactment) § 43–2–2, which states:

> "Every act, amending or repealing a public law shall, immediately preceding the public law to be amended or repealed, refer to the law by the number and name of the chapter containing the law amended or repealed, and to the year of its passage; provided, however, that any failure to include the reference shall not invalidate or otherwise render void the act."

---

**5.** General Laws 1956 (1986 Reenactment) § 28–5–7, as amended by P.L.1987, ch. 494, § 1, states in relevant part:

"It shall be an unlawful employment practice: (1) For any employer: (A) To refuse to *hire any applicant for employment because of* his race or color, religion, sex, handicap, age,

or country of ancestral origin, or (B) Because of such reasons, to discharge an employee or discriminate against him or her with respect to hire, tenure, compensation, terms, conditions or privileges of employment, or any *matter directly or indirectly related to em-* ployment."

In response Power cites to § 28–5–38, as amended by P.L.1988, ch. 310, § 3, which states:

"Liberal Construction.—The provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof, and any law inconsistant with any provision hereof shall not apply. Nothing contained in this chapter shall be deemed to repeal any of the provisions of any law of this state relating to discrimination because of race or color, religion, sex, physical handicap, age or country of ancestral origin. Nothing contained in this chapter shall be deemed to repeal any of the provisions of any law of this state relating to parental leave."

Power states that § 28–5–38 "must be construed to override any contrary provisions in a general retirement law."

We think it is clear that the question of whether FEPA invalidates the act is a question of law. *See St. Germain v. City of Pawtucket*, 119 R.I. 638, 641, 382 A.2d 180, 181 (1978) (duty of court to resolve conflicts between statutes). The sole question is one of statutory construction void of any factual issues. The trial judge erred in failing to rule whether the passage of FEPA repealed, or otherwise made unenforceable, the act. We rule today that notwithstanding § 28–5–38, Power fails to state a valid FEPA claim because under § 43–3–26, the act is a "special act" and FEPA is a "general" law.

■ In conjunction with the FEPA claim, Union states that Power has failed to exhaust his administrative remedies before bringing this FEPA claim to the Superior Court. Union cites to §§ 28–5–17, 28–5–18, and 28–5–24.1 as mandating the dismissal of a Superior Court action where the commission has not had the opportunity to negotiate a settlement on a FEPA claim. More particularly, Union cites to *Roadway Express, Inc. v. Rhode Island Commission for Human Rights*, 416 A.2d 673, 676 (R.I. 1980), for the proposition that this court has been willing to dismiss a Superior Court claim when the procedural requirements for filing have not been complied with. Before the trial court, Power's sole

rebuttal was that Union has no evidence that charges have *not* been filed with the commission. Before this court, Power now states that charges have been filed before the commission. However, Power makes no attempt to rebut Union's argument that Rhode Island law prevents a FEPA claim until administrative remedies have been exhausted.

■ Although we agree that the "exhaustion" doctrine would normally ban Power's FEPA claim, *Paulo v. Cooley, Inc.*, 686 F.Supp. 377, 382 (D.R.I.1988), we believe this case falls within an exception that allows him to bring his suit directly to the Superior Court. The retirement board was operating under a mandamus order approved by this court, to retire police personnel such as Power. To require Power to bring his FEPA claim before the commission would be a futile effort. The commission would be unable to undertake its normal task of "conference, persuasion, and conciliation" to reach a settlement on Power's claim, because the retirement board was obligated to follow our mandamus order. *See* § 28–5–16; *see also Providence Firefighters Local 799 v. Retirement Board of City of Providence*, No. 88–221–A. (R.I., filed January 11, 1988). We shall not require Power to make a fruitless trip to the commission when it is "crystal clear and certain" that he could not have a favorable outcome. *See Ambeault v. Burrillville Racing Ass'n*, 118 R.I. 310, 315, 373 A.2d 807, 809 (1977). Moreover, the purposes of the exhaustion doctrine would not be furthered by our not allowing Power's claim to be heard. Typically, the exhaustion "doctrine enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy." *Christopher W. v. Portsmouth School Committee*, 877 F.2d 1089, 1094 (1st Cir.1989). Here there is no factual record to develop. The only question that would be before the commission is whether age discrimination under the act is a violation of FEPA. We give less deference to

the exhaustion doctrine when "a pure matter of law" is before the administrative agency. *Id.* at 1095. For these legal reasons, Power may properly assert his FEPA claim before the Superior Court. However, again, the question of whether Power may properly assert a FEPA claim without exhausting his administrative remedies is a question of law, and the trial judge erred in refusing to grant summary judgment on the basis that a question of fact exists.

Union further asks that we consider an argument not raised before the trial court. After the trial court issued its decision on May 24, 1989, the Rhode Island Legislature amended FEPA on July 3, 1989. *See* P.L. 1989, ch. 183, § 2. By the addition of § 28–5–7.1 to the Rhode Island General Laws, the Rhode Island Legislature amended FEPA to conform to the analogous federal statute, 29 U.S.C. § 623(i) (1988). The Rhode Island amendment states that certain age discrimination against fire and police personnel does not violate FEPA with respect to causes of action accruing after July 3, 1989. *See* P.L.1989, ch. 183, §§ 2, 3. Assuming we were to allow Union to raise this argument for the first time before this court, the argument is fruitless since clearly the facts demonstrate that if Power had a cause of action under FEPA, it arose prior to July 3, 1989.

### B. *Settlement Agreement*

Union alleges that assuming that Power is a beneficiary of the settlement agreement between the police department and Campbell, the commission and the police department had no authority to make a settlement in direct contravention to the act. Union characterizes the rights that purportedly inure to Power under the settlement agreement as contract-based rights. Thus, Union alleges that Power's rights are invalid because contract rights cannot be based on an agreement (the settlement agreement) that violates state law (the act).

In response, Power replies that "[j]ust because it may not be illegal to force [Power into] retirement does not mean that the City cannot contract to refrain from doing

it. Perhaps the City and the Commission in 1984 evidently believed that eliminating age discrimination was the right thing to do." Power therefore argues that the settlement agreement does not contradict the act since the act merely authorizes age discrimination, but does not mandate it. As such, the settlement agreement is valid and binding, and its execution was not ultra vires to the commission or to the police department.

Once again, the arguments that the parties have presented relate solely to questions of law. The trial judge erred in failing to rule on the legal question of whether the settlement agreement is invalid on the basis that it contravenes the act.

■▬▬ We rule today that to the extent that Power claims any rights under the settlement agreement, the settlement agreement is void because it directly conflicts with the act. We distinctly disagree with Power's argument that the act merely authorizes, but does not mandate, age discrimination. We think it clear that the act *requires* age discrimination against class-B employees such as Power. Contracts entered into in contravention to a state statute, as the settlement agreement is to the act, are illegal, and no contract rights are created thereby. *Birkett v. Chatterton,* 13 R.I. 299, 302 (1881).

We note further that Power's argument as quoted above seems to imply that the commission is vested with omnibus powers to strike down statutes which it "evidently believes" to be violative of FEPA. We reject any such assertion. First, if the social policies of the act and FEPA are in conflict, then clearly that is a matter for the Legislature to rectify.

Second, whether the act violates FEPA is clearly up to the judiciary to decide. *See Armstrong v. Polaski,* 116 R.I. 661, 666, 360 A.2d 558, 561 (1976) (questions of law are judicial functions and judiciary's decision is not affected by out-of-court agreements on the law). Agreements between parties on questions of law, such as the settlement agreement that agreed that the act violated FEPA, are not binding on the judiciary or on third parties such as Union.

*Id.; see also Guinther v. Wilkinson,* 679 F.Supp. 1066, 1069 (D. Utah 1988) (only upon order of court is there a binding declaration of unconstitutionality of statute; stipulations and lack of enforcement by Attorney General are insufficient); *Albaum v. Carey,* 283 F.Supp. 3, 7 (E.D.N.Y. 1968) (the court must not accept a statutory construction proffered by the parties because to do so would render the court impotent to protect those not before it from the stare decisis effect of the court's decision).

## C. *Equal Protection Clause Claim* [6]

Both parties to this suit agree that the Equal Protection Clause claim is to be adjudicated under the minimal judicial scrutiny of the rational basis test. *See Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171, 176 (1979); *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 313–14, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520, 525 (1976).

Union argues that summary judgment should have entered in its favor because the constitutionality of a statute is a question of law and because in this case the act satisfies the scrutiny of the rational basis test. Union cites *Murgia, supra,* for the proposition that the Legislature's age classification need not be perfect and that individualized determinations in regard to lawful age discrimination need not be made.

Union proffers that the legitimate purpose of the act is to provide promotional opportunities and to recognize that the fitness of safety personnel naturally declines with age. The Legislature had to draw the line somewhere and to draw it at age sixty is not irrational, Union claims. Union cites to *Vance, supra,* for the proposition that the ultimate burden in an Equal Protection challenge is for Power to demonstrate that the act serves no legitimate purpose and/or has no rational relationship to such purpose. Union also states that there is a presumption of rationality and enforceability in all statutes, and that to uphold the act, this court can offer a legitimate legislative purpose for the act.

Power attempts to rebut Union's argument by distinguishing *Murgia.* He states that in *Murgia,* the trial court made specific factual findings concerning the duties of the Massachusetts State Police troopers. These factual findings proved "indispensable" to the Supreme Court's upholding of the compulsory retirement scheme, Power claims. Power says, without citing authority, that Union bears the burden of producing evidence of Power's duties and that the absence of a factual finding of his duties is a material question of fact warranting the denial of summary judgment. Power states that ensuring physical preparedness cannot be the purpose of the act because every other municipality in the State has a mandatory retirement age of sixty-five, re-

---

**6.** Power claims that he is challenging the act as unconstitutional under both the Rhode Island and the Federal Constitutions. However, Power's brief only cites to federal constitutional law. He does not make any attempt to cite to any provision of the Rhode Island Constitution or to any Rhode Island case law. For these reasons, we do not pass on the constitutionality of the act under our State Constitution. *See* Supreme Court Rule 16(a) (points not made will ordinarily be treated as waived); *see also Malinou v. R.I. Hospital Trust National Bank,* 116 R.I. 548, 552 n.4, 359 A.2d 43, 45 n.4 (1976); *Mercurio v. Fascitelli,* 116 R.I. 237, 243–44, 354 A.2d 736, 740 (1976).

Union alleges before the Superior Court and this court that Power has failed to comply with Rule 24(d) of the Superior Court Rules of Civil Procedure, requiring notice to the State Attorney General when a state statute is challenged on constitutional grounds. We take notice that Power has failed to comply with Supreme Court Rule 32(b), the Supreme Court equivalent to Super. R. Civ. P. 24(d). Even though Power is the respondent to this appeal, he is still the party challenging the constitutionality of the act, and therefore he had the obligation to comply with Rule 32(b).

Union alleges that the remedy for failure to notify the Attorney General is a dismissal of those claims under *Brown v. Samiagio,* 521 A.2d 119, 121 (R.I.1987) (failure to comply with G.L. 1956 (1985 Reenactment) § 9–30–11 warrants dismissal), and *Westerly Residents for Thoughtful Development, Inc. v. Brancato,* 565 A.2d 1262, 1264–65 (R.I.1989). Were we inclined to strike down the act as unconstitutional, we would dismiss Power's claims since the Attorney General has not been given the opportunity to voice support for the act. However, whereas we today uphold the act to Power's constitutional challenges, we will not dismiss for failure to comply with Super. R. Civ. P. 24(d) and Supreme Court Rule 32(b).

sulting in disparate treatment without a rational basis. Power states that by allowing summary judgment in Union's favor, without a finding of fact as to the legitimate basis and rational relationship of the act, would result in a per-se rule of constitutionality for mandatory retirement laws.

In sum Power cited the following to the trial court as material questions of fact warranting the denial of Union's motion for summary judgment: [7]

"1) What is the basis (i.e. motivation) for the Act?

"2) Is the basis rational?

"3) If there is a rational basis, and it is identified, is it the motivating factor for the terminations?

"4) What are the job duties of the affected police officers?

"5) Is the motivation for the Act served by the termination of employees with the aforementioned job duties?"

■ It is well-settled law that the constitutionality of a statute is a question of law for the court to decide. *See, e.g., Massachusetts Board of Retirement v. Murgia,* 427 U.S. at 312, 96 S.Ct. at 2566, 49 L.Ed.2d at 524 (court concluded statute passes rational basis test); *Weinberger v. Salfi,* 422 U.S. 749, 777, 95 S.Ct. 2457, 2472–73, 45 L.Ed.2d 522, 546 (1975) (same). In regard to the rational basis test, whether the act serves a legitimate objective and whether the act is rationally related to that objective, are questions of law. We view Power's questions of fact (1) and (2) as asking whether there is a legitimate objective for the act. We view Power's fifth question of fact as asking whether the act is rationally related to that objective. Both of these are questions of law susceptible of determination on summary judgment.

■ With respect to Power's third and fourth purported questions of fact, we view them as immaterial to deciding the constitutionality of the act as measured under the rational relationship test. Power seems to ask this court to undertake a

judicial inquiry that the United States Supreme Court rejected in *Weinberger v. Salfi,* 422 U.S. at 773, 95 S.Ct. at 2470–71, 45 L.Ed.2d at 543. In that case, the trial court undertook to examine Congress' "purpose" in enacting certain sections of the Social Security Act. From there, the trial court went about examining the necessity for the sections and the question of whether it would be possible to have individualized determination for the individuals particularly affected by those sections, rather than to use a legislative classification. *Id.* The United States Supreme Court rejected that degree of judicial involvement in measuring the constitutionality of a statute under the rational basis test. *Id.* Rather, the Court said that the proper scope of its inquiry is to determine whether Congress *could* rationally conclude that its legislation would effectuate a resolution to a legitimate problem. *Id.* at 777, 95 S.Ct. at 2472–73, 45 L.Ed.2d at 545–46. As the United States Supreme Court stated in *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961), the Equal Protection Clause is violated "only if the [legislative] classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power * * *. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

The posture of the present case is somewhat similar to a recent case decided by the Supreme Court of Pennsylvania. *See Gondelman v. Commonwealth,* 520 Pa. 451, 554 A.2d 896, *cert. denied,* —— U.S. ——, 110 S.Ct. 146, 107 L.Ed.2d 105 (1989). In that case, several Pennsylvania state court judges challenged the Pennsylvania Constitution's mandatory age-seventy retirement requirement on Equal Protection grounds. *Id.* at 454, 554 A.2d at 897. The Commonwealth moved for a summary-judgment-like decision but the trial court denied the mo-

---

7. It is not clear exactly which (if any) of Power's proffered material questions of fact were relied upon by the trial justice in denying Union's motion for summary judgment. The trial jus-

tice's order states: "The court finds as follows: A material issue of fact exists with regard to the age at which plaintiffs can be forced to retire and upon what basis that can occur."

tion, stating that the plaintiffs could prevail if they demonstrated that the "stated objectives of [the Pennsylvania retirement provision] failed to accomplish the intended purpose." *Id.* at 462, 554 A.2d at 901. The plaintiffs suggested several reasons why there was no rational relationship. Therefore, the trial court ruled that it was a material question of fact as to whether there was a rational relationship to a legitimate state interest. *Id.* at 463, 554 A.2d at 901–02. The Supreme Court of Pennsylvania overturned the trial court, ruling that assuming that the plaintiffs could prove their allegations, they would not be relevant to deciding the federal constitutionality of the Pennsylvania Constitution. *Id.* at 463, 554 A.2d at 902. Rather, the *Gondelman* court said that its inquiry was limited to "seek[ing] * * * assurance that the intent of the classification at issue bears some fair relationship to a legitimate public purpose." *Id.* (citing *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).

■ Therefore, we think it clear that under minimal judicial scrutiny of the rational basis test, it is not proper to undertake the inquiry Power wishes us to take. We need not and must not delve into the Legislature's "motives" for passing legislation. Even if the Legislature had a constitutionally improper "motive" when it passed legislation, the legislation would still hold up to rational basis scrutiny if this court could find any legitimate objective. *See In re Advisory Opinion to the House of Representatives,* 485 A.2d 550, 552 (R.I.1984) (if what the Legislature has done is constitutional, the reasons why it has done so are irrelevant); *see also Malmed v. Thornburgh,* 621 F.2d 565, 569 (3d Cir.), *cert. denied,* 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980) (if court can find that a provision rationally furthers *any* legitimate objective, it is constitutionally irrelevant whether this reason in fact underlies the decision to pass the provision) (citing *Flemming v. Nestor,* 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435, 1445 (1960)).

Therefore, we rule that Power's proffered question of fact number (3) is immaterial and thus not a proper question on which to deny summary judgment.

■ Power's question number (4), Power's job duties, appears to go to the question of an individual determination of whether Power could continue to perform his assigned tasks with the police department. This is precisely the argument that the United States Supreme Court rejected in *Massachusetts Board of Retirement v. Murgia,* 427 U.S. at 316, 96 S.Ct. at 2568, 49 L.Ed.2d at 526–27. *Murgia* clearly holds that if a legislative classification is constitutional under the rational basis test, then no individualized determination need be made to see if a particular individual (such as Power) could physically continue his job. *Id.* (that state chooses not to determine fitness more precisely through individual testing is not to say that the objective is not rationally furthered). Therefore, we rule that Power's question number (4) is not a material question of fact to warrant the denial of summary judgment.

For the foregoing reasons, we rule that the trial justice erred in failing to rule on the constitutionality of the act as against an Equal Protection Clause challenge. No material questions of fact exist. We therefore proceed to consider the merits of the parties' respective arguments on the act's constitutionality as against the Equal Protection challenge.

■ We undertake our discussion by clarifying who has the burden of proof on this motion for summary judgment. In an ordinary civil litigation case, the moving party on a motion for summary judgment bears the burden of showing that no material questions of fact exist and that judgment can be entered in the moving party's favor, based on pure legal questions. *Vance v. Bradley,* 440 U.S. at 110–11, 99 S.Ct. at 949, 59 L.Ed.2d at 184. However, where the issue is an Equal Protection challenge to a statute, the burden is on the party challenging the statute to convince the court of its unconstitutionality. *Id.* (nonmoving party to motion for summary judgment bears burden of showing unconstitutionality); *Burrillville Racing Ass'n v. State,* 118 R.I. 154, 157–58, 372 A.2d 979,

982 (1977). Therefore, even though Power is the responding party to Union's motion for summary judgment, Power still had the burden of proving that the act was not rationally related to a legitimate objective. *Vance,* 440 U.S. at 111, 99 S.Ct. at 949, 59 L.Ed.2d at 184 ("those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker").

■ The rational basis standard is a "relatively relaxed standard reflecting [an] awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary." *Murgia,* 427 U.S. at 314, 96 S.Ct. at 2567, 49 L.Ed.2d at 525. Legislative classifications are presumed to be valid. *Id.; Burrillville Racing Ass'n v. State,* 118 R.I. at 157, 372 A.2d at 982; *State v. Beck,* 114 R.I. 74, 77, 329 A.2d 190, 193 (1974). A party challenging a statute's constitutionality must demonstrate its unconstitutionality beyond a reasonable doubt. *Beck,* 114 R.I. at 77, 329 A.2d at 193. If a legislative classification is otherwise constitutionally permissible, more exact determination of individually affected individuals need not be undertaken. *Murgia,* 427 U.S. at 316, 96 S.Ct. at 2568, 49 L.Ed.2d at 526–27.

■ We think the facts of this case are remarkably similar to the *Murgia* case. Although we do not have the benefit of a legislative study as in *Murgia,* we think that much of the reasoning in *Murgia* applies to this case. The *Murgia* Court stated: "Through mandatory retirement at age 50 [of Massachusetts State Police Troopers], the legislature seeks to protect the public by assuring physical preparedness of

its uniformed police. Since physical ability generally declines with age, mandatory retirement at age 50 serves to remove from police service those whose fitness for uniformed work presumptively has diminished with age. This clearly is rationally related to the State's objective." *Id.* at 314–15, 96 S.Ct. at 2567–68, 49 L.Ed.2d at 525–26; *see also Vance,* 440 U.S. at 101, 99 S.Ct. at 944, 59 L.Ed.2d at 178 (it is a legitimate objective to stimulate highest performance by ensuring that opportunities for promotion would be available). It is a common sense proposition that aging, by definition, inevitably wears us all down. *Vance,* 440 U.S. at 112, 99 S.Ct. at 950, 59 L.Ed.2d at 185.

We need say no more. We need not explore all the reasons that could be advanced to justify the act. *Dandridge v. Williams,* 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491, 502 (1970). A legitimate objective to having mandatory retirement of the safety personnel in this case is to ensure physical ability to handle police tasks and to stimulate performance of younger personnel by providing opportunities for advancement. If the age of fifty is rationally related to ensuring physical capabilities in *Murgia,* we find the age of sixty rationally related to the dual objectives in this case. We do not decide today that the act is wise or that it best fulfills desirable social or economic objectives. *Id.* at 487, 90 S.Ct. at 1162, 25 L.Ed.2d at 503. All we find today is that the act is rationally related to furthering legitimate objectives.[8]

### D. *Due Process Claim*

■ Union claims that Power's Due Process rights were not violated since Power does not have a protected property interest in continued employment past the age of sixty. Union states that the dimensions

---

**8.** We need not have empirical proof or statistical evidence that health and energy tend to decline with age, before we may uphold the act. *See Vance v. Bradley,* 440 U.S. 93, 110, 99 S.Ct. 939, 949, 59 L.Ed.2d 171, 184 (1979). Our task is limited to ascertaining that the Legislature could rationally have concluded that the act would rationally serve to remedy the problems associated with aging safety personnel. *Id.* at

111, 99 S.Ct. at 950, 59 L.Ed.2d at 184; *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961); *Burrillville Racing Ass'n v. State,* 118 R.I. 154, 157, 372 A.2d 979, 981 (1977) (classification constitutional unless rests on grounds wholly irrelevant to statute). *See also Malmed v. Thornburgh,* 621 F.2d 565, 569 (3d Cir.), *cert. denied,* 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980).

of Power's rights and expectations are defined by State law. Under State law, Power's property interest ended by its very terms when Power reached the age of sixty. Therefore, no type of hearing was required before Power could be forced to retire.

In rebuttal, Power cites *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), for the proposition that Power does have a protected property interest that requires some minimum rudimentary due process before Power's termination.

Rather than assist Power, we think *Roth* works against him. Power's property interest is undoubtedly derived from Rhode Island law, not from the Constitution. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. In *Roth* the Court dealt with a college professor hired by a state university for a fixed one-year term. *Id.* at 578, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. Roth's contract specifically provided a termination date without a provision for renewal. *Id.* In finding that Roth had no property interest, the Supreme Court stated that Roth had no interest or entitlement to reemployment, whether by statute, university rule, or university policy. *Id.* In sum, the Court stated that whereas Roth may have had an "abstract" interest in continuing employment after the termination date, he did not have a property interest requiring a hearing and due process. *Id.* The case of *Bishop v. Wood* is equally unavailing to Power. That case holds that it is not a deprivation of a liberty interest when an at-will state employee is fired without due process. 426 U.S. at 348, 96 S.Ct. at 2079, 48 L.Ed.2d at 692.

We agree with Union that Power's property interest, by definition, ceased to exist when Power reached the age of sixty. No hearing or other due process was required before Power could be removed from the public payroll. Power's Due Process rights were not violated in this case.

## II. *Power's Preliminary Injunction*

Having ruled that Union's motion for summary judgment should have been granted, we rule that Power's motion for preliminary injunction should not have been granted.

Union's petition for certiorari is hereby granted. The decision of the Superior Court denying Union's motion for summary judgment is hereby quashed. Union's appeal with respect to the Superior Court's grant of the preliminary injunction is hereby sustained. The judgment granting the preliminary injunction is hereby vacated. We remand the papers of the case back to the Superior Court with directions to enter judgment in favor of Union accordingly.