[1] Per Administrative Order No. 2007-18, the cases of State v. JohnDoe, PM/07-6114, and State v. Greenberg, P1/07-4070A, have been consolidated for decision by this Court. The instant decision shall apply to all cases concerning superior court jurisdiction over defendants aged seventeen during the time period between the effective dates of the July and November amendments to G.L. 1956 § 14-1-6.
 DECISION
Before this Court is a motion to dismiss, or alternatively, to transfer to the Family Court, all matters pending in the Superior Court involving defendants who are alleged to have committed an offense while seventeen years old, per G.L. 1956 (2002 Reenactment) § 14-1-6 (2007 Supp.), and whose cases had not been certified to or waived into this Court by virtue of G.L. 1956 §§ 14-1-7 or 14-1-7.1. For purposes of this motion, these cases have been consolidated. *Page 2 
 I Facts and Travel "Having regard to the great, complex, ever-unfolding exigencies of government, much which will seem unconstitutional to one man, or body of men,[2] may reasonably not seem so to another; that the constitution often admits of different interpretations; that there is often a range of choice and judgment; that in such cases the constitution does not impose upon the legislature any one specific opinion, but leaves open a range of choice; and that whatever choice is rational is constitutional." James Bradley Thayer, The Origin and Scope of the American Doctrine of Constitutional Law, 7 Harvard Law Review 129, 144 (1893).
The validity and wisdom of legislative choices are questioned frequently by our citizens. The matter the Court approaches today is no different; it has spawned intense public discourse. The issue before this Court is a classic illustration of the respective roles and relationships among our three branches of government — the Executive, the Legislative, and the Judicial. Before the 2007 legislative session, the Executive Department and Legislature conceived and crafted an enactment designed to confer Superior Court jurisdiction over seventeen-year-olds. It ultimately was effective for a period of one hundred and thirty days prior to its repeal. Defendants challenge this enactment on the grounds that it was an imperfect and unconstitutional exercise of legislative power that has unfairly trapped seventeen-year-olds who are charged with committing criminal offenses during this period in the adult system.
The group of seventeen-year-olds falling within the four-month, seven-day period during which the enactment was effective has been described by various sources as "gap kids." This Court believes the more appropriate description of this group is "seventeen- *Page 3 
year-old alleged offenders of the criminal laws of this state."[3]
Their status has been debated since Representative Robert Watson introduced House Bill no. 5300 (H.B. 5300) for consideration on February 1, 2007.
In its entirety, H.B. 5300 served as the Governor's 2008 fiscal year budget. The bill's original text contained Article 22, an act relating to delinquent and dependent children. Notably, Article 22 proposed an amendment (the July amendment) to G.L. 1956 (2002 Reenactment) §14-1-6.[4] This particular provision contemplated extending Superior Court jurisdiction over seventeen-year-old individuals alleged to have committed acts that would ordinarily be considered felonies if committed by an adult. The move to permit criminal prosecutions of seventeen-year-olds in Superior Court had been seen as a method to ensure that convicted offenders would serve time in the Adult Correctional Institution (ACI) instead of the Rhode Island Training School (Training School). The House Finance Committee conducted an initial public hearing on the proposed legislation on March 28, 2007. It is undisputed that these discussions were fiscal in nature. At a second public hearing held on June 8, 2007, the House Finance Committee presented H.B. 5300 Sub A, an amended version of the 2008 budget. Minimal changes to the proposed language of Article 22 had been made. At that time, it voted to recommend H.B. 5300 Sub A for passage by the House of Representatives (House). Shortly thereafter on June 16, 2007, the House passed the amended version of H.B. 5300. *Page 4 
Upon passage by the House, H.B. 5300 Sub A was transferred to the Senate Finance Committee. On June 19, 2007, the Finance Committee recommended its passage by the full Senate. The Senate obliged, and passed H.B. 5300 Sub A on the same day. Although it was successful in both houses of the General Assembly, H.B. 5300 Sub A never received the Governor's approval; it was vetoed on June 21, 2007.[5] In response, the General Assembly overrode the Governor's veto on the same day, thereby rendering the legislation containing the July amendment effective as of July 1, 2007. See § 14-1-6 (2007 Supp.).
Merely one day after the House and Senate overrode the Governor's veto, and prior to the time the July amendment even became effective, winds of change stirred once again among General Assembly members. Senators Alves and Paiva-Weed introduced another piece of legislation that specifically targeted the July amendment. Senate Bill no. 1141 (S.B. 1141), an act relating to Family Court jurisdiction, proposed to restore jurisdiction over individuals aged seventeen to the Family Court.[6] The Senators' bill also addressed the treatment of records resulting from proceedings against seventeen-year-olds as a result of the July amendment. See P.L. 2007, ch. 532, § 2, eff. Nov. 8, 2007 (setting forth provisions of § 14-1-6.1 and § 14-1-6.2 regarding sentencing). On June 22, 2007, the same day as its introduction, the Senate Committee on Finance recommended the bill's passage. The Senate passed S.B. 1141 Sub A. The bill, however, was not transmitted to the House Committee on Finance until October 29, 2007. *Page 5 
In the meantime, numerous seventeen-year-olds are alleged to have committed criminal offenses. One in particular, seventeen-year-old Ryan Greenberg, was charged via criminal complaint with reckless operation of a motor vessel with death resulting, refusal to submit to a chemical test, and possession of alcoholic beverages as a minor.[7] Greenberg's actions allegedly occurred on the waters of the Barrington River on July 17, 2007, approximately two months beyond his seventeenth birthday.[8]
This incident resulted in the death of Patrick Murphy; he was also seventeen at the time of his death.
On September 27, 2007, Greenberg's case was referred to a statewide grand jury, where the State requested permission to issue subpoenas for cell phone records belonging to individuals involved in the July 17, 2007 incident. (Mem. In Opp'n to Mot. to Dismiss, at 2). The grand jury granted this request, and after the return and receipt of that information, the State began its presentation. Beginning on November 14, 2007, it presented approximately twenty witnesses and thirty exhibits.Id. On December 3, 2007, the grand jury returned an indictment. The charges comprising the filed indictment included second degree murder, operating a motor vessel to endanger with death resulting, refusing a chemical test, and possession of alcoholic beverages as a minor. Greenberg pled not guilty to these charges at his January 2, 2008 arraignment.
Amidst these events, the House Finance Committee eventually recommended S.B. 1141 Sub B, containing minor textual changes, for passage by the House after a public hearing. On that same day, October 30, 2007, both houses passed the proposed legislation. Governor Carcieri did not sign S.B. 1141 Sub B, and it became effective on *Page 6 
November 8, 2007. See P.L. 2007, ch. 532, § 1. The Legislature did not make the changes to § 14-1-6 (the November amendment) retroactive; therefore, seventeen-year-olds committing acts placing them within the grasp of § 14-1-6 remain in a judicial posture governed by the law existing at the time of their proscribed conduct — the law that was in force as a result of the July amendment.
These criminal defendants now move to dismiss, or alternatively transfer their cases to the Family Court. Their motions come to the Court pursuant to Rule 12 of the Superior Court Rules of Criminal Procedure.[9] Rule 12 governs motions that present impediments to the continued prosecution of criminal matters. See John A. MacFadyen 
Barbara Hurst, Rhode Island Criminal Procedure, § 12.3 (1989). In fact, Rule 12(b)(2) provides that certain defenses and objections must be raised only by motion before trial within a certain time frame; however, the same subsection also provides that an objection relating to lack of jurisdiction is excepted from this requirement, Super. R. Crim. P. Rule 12(b)(2), and "shall be noticed by the court at any time." Id.
Certainly, a lack of jurisdiction based on constitutional grounds or subject matter jurisdiction in this Court is an impediment to prosecution here. See Warwick Sch. Comm. v. Warwick Teachers'Union, 613 A.2d 1273, 1276 (R.I. 1992) (stating subject matter jurisdiction is an "indispensable ingredient in any judicial proceeding" and cannot be waived); see also U.S. v. Wilson, 210 F.3d 230, 233 (4th Cir. 2000) (suggesting constitutional challenge that charge based on statute violates Ex Post Facto clause has jurisdictional consequences). Consequently, the Court will rule on defendants' motion as having been filed pursuant to Rule 12(b)(2). *Page 7 
 II Analysis
The thrust of the defendants' constitutional arguments is twofold. First, defendants contend that the November amendment impermissibly created a class of seventeen-year-old alleged offenders who are subject to prosecution as adults, thereby violating the equal protection guarantees afforded by the federal and state constitutions.[10]
Defendants argue that the short one-hundred thirty-day period during which the Superior Court acquired jurisdiction, coupled with the loss of the array of counseling and confinement alternatives within the juvenile system, violates the constitutional rights of seventeen-year-olds charged during this period. Defendants' second argument is that the Legislature did not exercise due diligence in making its decision to lower the Superior Court jurisdictional age to seventeen. As a result, they argue, the Legislature violated their substantive due process rights in enacting provisions relating to § 14-1-6.
Defendants primarily rely on the testimony of two witnesses: A.T. Wall, the Director of the Department of Corrections, and Brother Michael Reis, the CEO of Tide Family Services. The Court found that these witnesses possessed considerable expertise in their respective fields of corrections and juvenile delinquency and were knowledgeable, informative, and forthright in offering information to the Court. The general content of their testimony was that neither believed this proposal, which had been visible in past legislative sessions, had any likelihood of passage in the 2007 session. Consequently, both gave little attention or consideration to the proposal and do not recall being asked about it to any significant extent at that time. *Page 8 
 A Constitutional Arguments
Because constitutional issues have been raised by the defendants,[11] and these issues are indispensably intertwined with the disposition of this matter,[12] this Court will address the constitutionality of the July and November amendments to § 14-1-6.See Power v. City of Providence, 582 A.2d 895, 902 (R.I. 1990) (recognizing constitutionality of statute remains question of law falling within judicial purview). In doing so, this Court indulges in every presumption that favors the legislative enactment's constitutionality. Gem Plumbing Heating Co. v. Rossi, 867 A.2d 796,808 (R.I. 2005); see also Cherenzia v. Lynch, 847 A.2d 818, 822 (R.I. 2004) (applying "greatest possible caution" in reviewing a challenge to a statute's constitutionality) (quoting Gorham v. Robinson, 57 R.I. 1,7, 186 A.2d 832, 837 (1936)). As a result, this Court will not invalidate a statute on constitutional grounds unless the challenging party can "prove beyond a reasonable doubt that the act violates a specific provision of the constitution or the United States Constitution." Id. (citing City of Pawtucket v. Sundlun, 662 A.2d 40,44-45 (R.I. 1995)); East Bay Community Dev't Corp. v. Zoning Board ofReview, 901 A.2d 1136, 1150 (R.I. 2006) (echoing similar concerns);see also Boucher v. Sayeed, 459 A.2d 87, 92 (R.I. 1983) (recognizing challenger seeking "judicial veto" of enactment on constitutional grounds bears burden of persuasion). *Page 9 
 1 Equal Protection
Defendants assert that seventeen-year-olds in the midst of proceedings before the Superior Court — all of whom are alleged to have behaved criminally during the period between the July amendment and November amendment (collectively, the amendments) — have been subject to equal protection violations. Specifically, defendants argue that they have been treated differently than their seventeen-year-old counterparts who committed prohibited offenses prior to the July amendment and subsequent to the November amendment.[13] The State, however, contends that neither amendment violates the Equal Protection Clause, insofar as the resulting age classifications arose from a valid exercise of legislative power that was rationally related to a legitimate state interest.
Article 1, section 2, of the Rhode Island Constitution provides, in relevant part, that no individual shall be "denied equal protection of the laws." R.I. Const. art. I, sec. 2; see also In re Advisory Opinionto the Governor, 652 A.2d 95, 100 (R.I. 1995) (recognizing state and federal constitution equal protection guarantees offer similar protection to individuals). However, the equal protection clause does not "demand that a statute necessarily apply equally to all persons."Kleczek v. R.I. Interscholastic League, Inc., 612 A.2d 734, 737 (R.I. 1992) (quoting Rinaldi v. Yeager, 384 U.S. 305, 309 (1966)). As such, our Legislature retains broad discretion in enacting legislation that treats certain groups of citizens differently from others. SeeCherenzia, 847 A.2d at 823. Therefore, a "fundamental principle of equal-protection analysis is that not all legislative classifications are impermissible." Boucher, 459 A.2d at 91. *Page 10 
The motion before this Court challenges the amendments to § 14-1-6, a statute that is jurisdictional and procedural in nature. The legislative classification which circumscribed Family Court jurisdiction was based on the category of crime committed and age — age being a determinative jurisdictional factor that was altered twice between July and November of 2007. Nevertheless, where no fundamental right has been implicated,[14] and no suspect classification has been created,[15]
a statute will be invalidated "only if the classification established bears no reasonable relationship to the public health, safety, or welfare." Kaveny v. Cumberland Zoning Board of Review, 875 A.2d 1, 11
(R.I. 2005). Therefore, this Court will employ a rational basis test to determine whether the amendments to § 14-1-6 violate equal protection of the laws.
"Under this analysis, if [this Court] can conceive of any reasonable basis to justify the classification, we will uphold the statute as constitutional." Mackie v. State, No. 2006-63-M.P., slip op. at 13 (R.I., filed Dec. 11, 2007) (quoting Kennedy v. State, 654 A.2d 708,712-13 (R.I. 1995)). Furthermore, this Court will not "delve willingly into the Legislature's `motives' for passing legislation." Id.
(citations omitted). Should a constitutionally improper motive be discerned, the legislation at issue would still meet *Page 11 
rational basis scrutiny if any legitimate objective grounded its enactment. Power, 582 A.2d at 903; see also In re Advisory Opinion tothe House of Representatives, 485 A.2d at 552 (R.I. 1984) (recognizing if what legislature has done is constitutional, its reasons for doing so are irrelevant).
This Court cannot engage in a results-oriented analysis guided only by the actual effects of the enacted legislation;[16] instead, its inquiry must center upon "whether the General Assembly could rationally conclude [at the time of its enactment] that the legislation would resolve a legitimate problem." Mackie, slip op. at 13. Therefore, "the equal protection clause is violated `only if the [legislative] classification rests on grounds wholly irrelevant to the achievement of the state's objective.'" Power, 582 A.2d at 902 (citing McGowan v.Maryland, 366 U.S. 420, 425-26 (1961)). "In accordance with these standards, a party attacking the rationality of [a] legislative classification [has] the burden to negative every conceivable basis which might support it." Mackie, slip op. at 14 (internal quotations omitted) (emphasis in original).
Turning to the instant matter, the language set forth in the July amendment to § 14-1-6 created a new group of individuals that would be subject to Superior Court jurisdiction: all seventeen-year-old alleged offenders committing offenses which would be punishable as felonies if committed by adults.[17] This change was primarily directed at *Page 12 
the post-conviction treatment of offenders. If treated as "adults," seventeen-year-olds would face "time" in the ACI instead of the Training School.
Prior to the July amendment, § 14-1-6 shielded seventeen-year-olds committing otherwise felonious conduct from Superior Court prosecution; conduct occurring while an individual was seventeen years of age could only be addressed in Superior Court if the Family Court had not acquired jurisdiction for that conduct prior to an individual's twenty-first birthday.[18] Distinguishing between seventeen-year-olds and eighteen-year- *Page 13 
olds with respect to juvenile jurisdiction is not a new concept;[19]
however, what is different about the instant legislation is that the jurisdictional aspects of the statute were altered with fiscal benefits in mind.[20]
In addition to enacting laws that protect the public's health, safety, and welfare, the General Assembly is charged with considering and approving a balanced budget each fiscal year.[21] This Court cannot deny that producing a balanced budget is a legitimate state objective with far-reaching implications for the public welfare. Apparent from the July amendment's enactment is the Legislature's belief that these measures — expanding Superior Court jurisdiction, and ultimately, conserving the state's resources by placing seventeen-year-olds in the ACI upon conviction — would reduce budgetary strain. The proffered means are undoubtedly related to the Legislature's objective. Nevertheless, defendants challenge the existence, accuracy, and adequacy of the information available to our General Assembly in choosing such means.
"All [this Court] can do is determine whether the provision is rationally related to achieving a legitimate state objective."Vance v. Bradley, 440 U.S. 93, 97 (1979). In *Page 14 
crafting statutory provisions, the legislature "is not compelled to verify logical assumptions with statistical evidence." Id. at 110. Furthermore, the Court's "responsibility for making `findings of fact' certainly does not authorize it to resolve conflicts in the evidence against the Legislature's conclusion or even to reject the legislative judgment on the basis that without convincing statistics in the record to support it, the legislative viewpoint constitutes nothing more than . . . `pure speculation.'" Id. (quoting Firemen v. Chicago, R. I. P. R. Co., 393 U.S. 129, 138-39 (1968)). Simply put, legislative choices are not subject to courtroom factfinding. Such choices can be grounded in "rational speculation unsupported by evidence or empirical data."Federal Communications Comm'n v. Beach Communications, Inc.,508 U.S. 307, 315 (1993) (citation omitted); see also Mackie, slip op. at 14 (recognizing "[state] was not required to support those reasons [for the current statutory scheme] with empirical evidence"); Vance,440 U.S. at 112 ("It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the courts to arbitrate in such contrariety.") (quoting Rast v Van Deman Lewis Co., 240 U.S. 342, 357 (1916)).
Although defendants insist, and our elected representatives might ultimately agree, that placing seventeen-year-olds in the ACI was ultimately a losing budgetary proposition, defendants failed to convince this Court that the Legislature could not have rationally believed that removing seventeen-year-olds from juvenile correctional institutions would reduce costs. See Mackie, slip op. at 13 (requiring only that General Assembly could rationally conclude legislation advances solution to legitimate problem). For example, defendants' own witness testified that the Department of Children, Youth, *Page 15 
and Families (DCYF), in recent years, included removing eighteen-year-olds from DCYF care and custody as a suggestion for lowering its budget when assessing its yearly expenses. Additionally, the Legislature expected to save $3.6 million dollars by placing seventeen-year-olds in the ACI; on average, housing an ACI inmate costs $39,000 per year while housing a DCYF youth costs the state $98,000 per year. Furthermore, there is no indication that members of the General Assembly were aware of, or ACI personnel commented on, a current ACI policy that automatically places seventeen-year-olds in more protective, maximum security custody, thereby increasing average housing costs to approximately $104,000 per seventeen-year-old inmate.[22] As a result, this Court finds that defendants have not demonstrated that "the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision maker." Malmed v. Thornburgh, 621 F.2d 565, 571 (8th Cir. 1980);see also Cherenzia, 847 A.2d at 822 (stating challenger to constitutionality of statute bears burden of proof beyond reasonable doubt).
Even assuming, arguendo, that the Legislature's fiscal motive for altering Family Court jurisdiction was improper, this Court finds that the challenged amendment would still pass constitutional muster.[23]
As courts are not bound by explanations of the legislature's rationale that may be offered by litigants, Barket, Levy Fine, Inc. v. St. LouisThermal Energy Corp., 21 F.3d 237, 240 (8th Cir. 1994), this Court may recognize *Page 16 
any conceivable basis that supports a legislative enactment. SeeMackie, slip op. at 14. The General Assembly, at its prerogative, may have determined that the high level of violent juvenile crime justifies the presumption of Superior Court jurisdiction over seventeen-year-olds.See McGowan, 366 U.S. at 426 (setting forth judicial consideration of various explanations underlying statute without any reasons having been proffered by the Legislature). Additionally, it could have concluded that the efficacy of the various rehabilitative programs offered to seventeen-year-olds was not justified in result, or in cost. See Statev. Berard, 121 R.I. 551, 557-559, 401 A.2d 448, 452 (R.I. 1979) (respecting Legislature's ability to determine that certain individuals expected to be less promising prospects for treatments). Therefore, a legislative choice to achieve certain rehabilitative and protective purposes by reference to the age and type of offense committed by a minor is certainly rational and consistent with constitutional principles.
In November, § 14-1-6 was altered once again. The November 2007 amendment restored Family Court jurisdiction over seventeen-year-olds committing otherwise criminal behavior, thereby expanding the class over which the Family Court could adjudicate allegations of delinquent, not criminal, conduct.[24] In analyzing its effects with *Page 17 
respect to equal protection, the same constitutional principles enunciated above apply. See Power, 582 A.2d at 902 (recognizing equal protection violated only where classification not related to legitimate legislative objective).
Prior to enacting the November amendment, the General Assembly entertained hearing testimony that demonstrated its fiscal miscalculation of the potential savings that would be generated by the revision of Family Court jurisdiction pursuant to § 14-1-6.[25] In addition, other individuals presented testimony regarding the detrimental effects of removing seventeen-year-olds from Family Court jurisdiction and ultimately sweeping them beyond the reach of possible DCYF custody and care. Either line of testimony might have supported the Legislature's decision to return seventeen-year-olds to Family Court jurisdiction. See Mackie, slip op. at 14 (acknowledging any conceivable basis which might support legislative classification will be sufficient to uphold statute's constitutionality). As a result, this Court finds that the November amendment, too, meets constitutional muster. Seeid. at 13 (finding statute constitutional where General Assembly could rationally conclude legislation would resolve legitimate governmental concern). Accordingly, the group of seventeen-year-olds arriving at the Superior Court's *Page 18 
doorstep arrived here merely as a result of timing, not as a result of legislation that violates their right to equal protection under the laws.
This Court must remind defendants that a legislature's miscalculation does not render the resulting legislation unconstitutional. "Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness or logic of legislative choices." Federal Communications Comm'n v. BeachCommunications, Inc., 508 U.S. 307, 313 (1993). The rational basis standard of review has been called a paradigm of judicial restraint,id. at 314, and "[t]he Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." Vance v. Bradley, 440 U.S. 93, 97 (1979). Today the Court does not decide that the July and November amendments were wise, that either amendment best fulfills the relevant social and economic ideals that our citizenry might espouse, or that a better statutory scheme could not be developed. Instead, the Court finds only that the July and November amendments to § 14-1-6 do not deny defendants equal protection of the laws. See Murgia, 427 U.S. at 317 (providing similar commentary on age classification directing mandatory retirement of uniformed police officers).
 2 Substantive Due Process
Defendants also contend that the July and November amendments each violated substantive due process principles contained in the federal and state constitutions. They assert that the short four-month, seven-day period during which the July amendment was *Page 19 
effective, supports an inference that the original proposal to lower the age of Superior Court jurisdiction was thoughtless, ill-conceived, arbitrary, and irrational. Implicit in defendants' argument is the belief that some threshold level of research, consultation, and discussion was required as a constitutional prerequisite to enactment of legislation in this matter. Moreover, defendants urge this Court to find that there was an obvious failure by the Legislature to thoroughly deliberate this issue, and thus, the legislative process was constitutionally flawed. However, defendants advance this position without citation to any authority supporting such a view.
"Substantive due process . . . addresses the `essence of state action rather than its modalities; such a claim rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible.'"Jolicoeur Furniture Co. v. Baldelli, 653 A.2d 740, 751 (R.I. 1995) (citing Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990)). Consequently, the substantive due process standard purports to protect individuals against arbitrary and capricious government action.East Bay Community Dev't Corp., 901 A.2d at 1150. It ensures that government action that is "egregiously unacceptable, outrageous, or conscience-shocking" will not be permitted. L.A. Ray Realty v. TownCouncil of the Town of Cumberland, 698 A.2d 202, 211 (R.I. 1997) (citations omitted). "Moreover, substantive due process prevents [against] legally irrational action that is not keyed to a legitimate state interest." Id. at 211; see also Kaveny, 875 A.2d at 11 (suggesting substantive due process violated if legislation attempts to reach valid purposes by "unreasonable means"). *Page 20 
When state legislation results from the General Assembly's exercise of its police power and does not impinge upon a fundamental interest, the party challenging the statute must demonstrate that "there is no rational connection between the enacted [legislation] and the legislative aim." In re Advisory Opinion, 519 A.2d at 582 (citingKelley v. Johnson, 425 U.S. 238, 247, 96 S. Ct. 1440, 47 L. Ed. 2d 708
(1976)). Thus, in order to prevail on a substantive due process claim, defendants must demonstrate that the government's action was "clearly arbitrary and unreasonable, having no substantial relationship to the public health, safety, morals, or general welfare." Cherenzia,847 A.2d at 826 (quoting Brunelle v. Town of South Kingstown, 700 A.2d 1075, 1084
(R.I. 1997)).
As discussed above, juveniles possess no fundamental constitutional right to have their cases adjudicated in the Family Court. SeeMastracchio, 546 A.2d at 169 (holding "[j]uveniles have no absolute constitutional right to avoid the adult penal system"). Therefore, the test to determine if actions of the Legislature violated defendants' substantive due process rights is whether, in enacting the amendments, the General Assembly was pursuing a permissible state objective, and if so, whether the legislation adopted was reasonably related to accomplishing those objectives. See L.A. Ray Realty, 698 A.2d at 211. The Court finds that defendants have not demonstrated beyond a reasonable doubt that the General Assembly's behavior was not keyed to a legitimate governmental purpose, lacked any reasonable relationship to the public welfare, or was shocking to the conscience.
As previously discussed, the General Assembly is charged with approving a balanced budget each fiscal year. Additionally, defining the boundaries of Family Court *Page 21 
jurisdiction is wholly within the Legislature's purview. SeeMastracchio, 546 A.2d at 168 (recognizing General Assembly confers jurisdiction on Family Court). The Legislature predicted that the expansion of Superior Court jurisdiction over certain seventeen-year-old offenders would reduce budgetary costs in terms of post-conviction confinement expenses. Cherenzia, 847 A.2d at 826 (requiring legislative act have reasonable relationship to public welfare). Consequently, the revisions made to § 14-1-6 in July were reasonably "keyed" to the legitimate conservation of state funds. See L.A. Ray Realty,698 A.2d at 211. Accordingly, the Court finds that the General Assembly's actions did not violate substantive due process.
Similarly, the November amendment cannot be deemed arbitrary or unreasonable. In fact, rolling back Superior Court jurisdiction as to seventeen-year-olds was the exact result urged by the November amendment's proponents. Upon finding that the estimated savings arising from the July amendment were less than desirable, or perhaps after receiving information suggesting that Family Court-supervised juvenile treatment of certain seventeen-year-old offenders[26] would be more beneficial to the general welfare, our legislature once again circumscribed Family Court jurisdiction.[27] As a result, the means employed — placing seventeen-year-olds within Family Court jurisdiction — to further either of these purposes are substantially related to legitimate governmental *Page 22 
concerns. See Malmed, 621 F.2d at 578 ("[I]n reviewing [a statutory provision] under the due process clause, we must examine all legitimate objectives that the [legislature] could have considered to determine if any of them are rationally served by the provision.").
Finally, this Court discerns no support for finding that the Legislature's behavior "shocked the conscience." Many other states afford less protection to juveniles than proposed by our Legislature; indeed, some of our sister states have more stringent jurisdictional age requirements than those offered by our statutes.[28] Similarly, the Court is unable to find any support for the notion that the length of time alone — albeit short in this case — that a legislative enactment is in effect renders the Legislature's actions particularly conscience-shocking, and thereby, unconstitutional. See Amsden,904 F.2d at 754 (recognizing "substantive due process inquiry focuses on `what' the government has done, as opposed to `how and when' the government did it"). This Court does not embrace such a sweeping and myopic view of the Legislature's actions.
Swift corrective action by government should be the ideal strived for when expected results from government action do not materialize. To find that the quick response of the Legislature equates to a tacit admission that its original action was so ill-conceived, arbitrary, and irrational, so as to constitute a constitutional violation would only serve to "chill" or discourage early remedial correction of inevitable misjudgments or miscalculations that occur in the legislative process. The Legislature's expedient decision to return the jurisdictional age to eighteen is the democratic process working at its best — rather than its worst — as urged by the defendants. Accordingly, the Court finds *Page 23 
that neither the Legislature's actions, nor the legislation itself, violates defendants' substantive due process rights.
 B Jurisdictional Arguments
Defendants argue that the Superior Court never obtained jurisdiction over their cases, and therefore, their continued existence in this forum is erroneous. They contend that the General Assembly's failure to alter other provisions in the statutory scheme — specifically § 14-1-5 — when it passed the July amendment — deprives this Court of jurisdiction to entertain the criminal complaints filed against them in Superior Court for offenses committed during the "gap" period. Instead, defendants assert that any petitions filed pursuant to § 14-1-6 (2007 Supp.) should have been filed in the Family Court.
The State, on the other hand, avers that the Superior Court currently has jurisdiction over the defendants and that it indeed had jurisdiction at the time the criminal complaints were filed. Consequently, the State believes, no petitions were required to be filed in Family Court before the Superior Court could acquire jurisdiction over defendants. Further, it asserts that dismissing these cases from the Superior Court or transferring them to the Family Court would contravene the stated intent of the General Assembly and create an absurd result.
In recent years, Rhode Island courts have not been called upon to address the newest additions to § 14-1-6 — its various statutory subsections — describing the retention of jurisdiction over children in the Family Court system, or their relationship to the overarching statutory scheme. In addressing defendants' argument that the July *Page 24 
amendment actually precludes the Superior Court from exercising jurisdiction over their cases, this Court will apply basic tenets of statutory construction.
If the statutory language is clear and unambiguous, the words of the statute will be interpreted literally. State v. Briggs, 934 A.2d 811,814 (R.I. 2007) (requiring interpretation of words using plain and ordinary meanings). The Court is mindful, however, that statutory language should not be viewed in isolation, In re Brown, 903 A.2d 147,149 (R.I. 2006), and every effort must be made to effectuate the Legislature's intent. Id.. In doing so, the Court is required to give statutory provisions meaning consistent with the Legislature's obvious policies or purposes. See Gryguc v. Bendick, 510 A.2d 937, 939 (R.I. 1986).
This Court presumes that the Legislature knows the state of existing relevant law when it enacts a particular statute. Briggs,934 A.2d at 814. Therefore, "inconsistent statutory provisions should be construed and applied, if at all possible, so as to avoid that inconsistency."State v. Goff, 110 R.I. 202, 205, 291 A.2d 416, 417 (1972) (citingState v. Haggerty, 89 R.I. 158, 151 A.2d 392 (1959)). "Under no circumstance will this Court construe a statute to reach an absurd result." See also State v. Menard, 888 A.2d 57, 60 (R.I. 2005) (citations omitted). Thus, where two irreconcilable provisions are found within a statutory scheme, any inconsistency may be resolved by giving effect to the provision enacted last-in-time. See Falstaff BrewingCorp., Re: Narragansett Brewery Fire, 637 A.2d 1047, 1051 (R.I. 1994).
Traditionally, § 14-1-6 defined the limits of Family Court jurisdiction by proposing an age limitation for individuals beyond which the Family Court no longer *Page 25 
could exercise its adjudicatory powers.[29] The title of § 14-1-6
— "[r]etention of jurisdiction" — then, is quite fitting for the section's purpose, as it describes limitations on the Family Court's ability to retain jurisdiction in certain instances. However, to understand when the Family Court is not able to retain jurisdiction, one must first understand when the court can exercise it.
It should be noted that a "jurisdictional division" appears between the Family and Superior Courts with regard to juveniles. State v.Day, 911 A.2d 1042, 1049 (R.I. 2006). The purpose of this jurisdictional separation among the Family Court and other courts is "to guard * * * [children] against the stigma attaching to criminal proceedings."Id. (citations omitted). Therefore, the Family Court possesses limited jurisdiction, and its powers are restricted to those conferred by statute upon it by the General Assembly. See Mastracchio,546 A.2d at 168 (citations omitted); see also Naughton v. Goodman, 117 R.I. 113,118, 363 A.2d 1345, 1348 (1976). Accordingly, "this court has firmly adhered to the age requirements circumscribing Family Court subject-matter jurisdiction." Mastracchio, 546 A.2d at 168
(acknowledging subject-matter jurisdiction firmly rooted in age of juvenile offender).
Additionally, the Family Court's governing statutes confer upon it limited subject matter jurisdiction over criminal offenses. Typically, criminal offenses falling within its jurisdiction are those dealing with criminal behavior committed by adults against children or other family members. Day, 911 A.2d at 1049. On the other hand, children *Page 26 
committing behavior that would be considered criminal, but for their age, "are not actually charged with, tried for, or convicted of the underlying crime in Family Court." Id. Section 14-1-40(a) explicitly states that "[no] child shall be charged with or convicted of a crime in any court, except as provided in this chapter." Section 14-1-40(a) (emphasis added). Instead, children accused of committing behavior that would be criminal if committed by an adult are brought before the Family Court via delinquency petition. Id.
As a result, the Family Court has exclusive personal jurisdiction over juveniles appearing before it on delinquency petitions, but lacks the subject matter jurisdiction necessary for criminal adjudication.Day, 911 A.2d at 1049. In the same respect, the Superior Court, as a court of general jurisdiction pursuant to G.L. 1956 § 8-2-15, is entirely capable of hearing cases involving violations of Rhode Island criminal law, which speak to its subject matter jurisdiction. However, "in the absence of a waiver from the Family Court[, it] . . . lacks personal jurisdiction to adjudicate allegations of criminal conduct with respect to children."[30] Id. (emphasis added). A "child" has long been defined as any person under eighteen. See § 14-1-3(3).
This explanation of Family Court jurisdiction is consistent with procedural operations arising from other statutory provisions, specifically those undertaken through § 14-1-5, a section governing the exclusive jurisdiction of the Family Court. As drafted, § 14-1-5(1) gives the Family Court exclusive jurisdiction in proceedings if any child is delinquent, wayward, dependent, neglected, or mentally disabled. See § 14-1-5(1). A delinquent child is defined as "any child who has committed any offense which, if *Page 27 
committed by an adult, would constitute a felony, or who has on more than one occasion violated any [other laws with some exceptions]." Section 14-1-3(5).
Section 14-1-5(1) concerning delinquent children, however, includes a caveat. Certain delinquent children, meeting three conditions, are excluded from the Family Court's exclusive jurisdiction.[31] If a person is (1) seventeen or older, (2) charged with a delinquent offense involving murder, first degree sexual assault, or assault with intent to commit murder, and (3) probable cause has been determined to exist via hearing before the Family Court that the person committed the offense, he or she "shall not be subject to the jurisdiction of the family court." See § 14-1-5(1). In fact, these individuals are considered "adults" within the statutory scheme.[32] Based on these provisions, it appears that a delinquent child will be treated as an adult only when the Family Court determines that probable cause exists to place him or her before another tribunal.
This provision has been called Rhode Island's "mandatory waiver statute." See Day, 911 A.2d at 1052 n. 11 (referencing § 14-1-5). A fair reading of Rhode Island's mandatory waiver provision indicates that certain delinquent offenses have been deemed *Page 28 
too serious to fall within the exclusive jurisdiction of the Family Court and, therefore, should be addressed in another forum.Naughton, 117 R.I. at 118, 363 A.2d at 1348 ("It is clear that this statute gives the Family Court jurisdiction only when the person before the court is a child whose conduct is such that the court must take appropriate action against him or her.") Accordingly, in these instances, the Family Court retains personal and subject matter jurisdiction over defendants to entertain petitions involving delinquency unless and until probable cause is found upon which a criminal complaint of a certain kind may be based. See § 14-1-5(1). Then, the Family Court loses subject matter jurisdiction per the Legislature's desire to have certain cases heard in criminal court, and must refrain from pursuing those cases.[33] Day, 911 A.2d at 1049.
Section 14-1-6 similarly places limitations on the Family Court's ability to retain jurisdiction over certain children and adults who committed proscribed behavior while children.[34] In years past, § 14-1-6 simply prohibited the exercise of jurisdiction over individuals beyond a certain blanket age if the Family Court had obtained jurisdiction over them as juveniles. However, P.L. 1990, ch. 15, § 2 and P.L. 1990, ch. 18, § 2 — first codified in the 1990 Supplement to the 1984 Reenactment — changed the landscape of § 14-1-6. These chapters further refined the allocation of Family Court jurisdiction over certain individuals by creating new subsections within § 14-1-6. *Page 29 
For example, G.L. 1956 (1994 Reenactment) § 14-1-6(b)[35] provided that conduct amounting to a felony committed before an individual's eighteenth birthday could be addressed in the Family Court, so long as the petition alleging the conduct was filed before the person turned twenty-one.[36] If, however, a person was at least twenty-one, and only after his or her twenty-first birthday had been charged with committing felonious conduct before his or her eighteenth birthday, that person was to be "referred to the court which would have had jurisdiction over the offense if it had been committed by an adult."See § 14-1-6(c) (1994 Reenactment). These provisions reflected the general policy existing at the time, which permitted jurisdiction over individuals until they became twenty-one years of age. See § 14-1-6(a) (1994 Reenactment).
The content of § 14-1-6's subsections remained relatively constant until July 1, 2007.[37] As discussed, the July amendment to § 14-1-6
dictated that Family Court jurisdiction should end over all persons within the Family Court system at age nineteen. See § 14-1-6(a) (2007 Supp.). Subsection (b) of the July amendment provided that any seventeen-year-olds accused of committing, before their seventeenth birthday, conduct that would amount to a felony "shall be referred to the court which would have had jurisdiction over the offense if it had been committed by an adult." See § 14-1-6(b) (2007 Supp.). Additionally, subsection (c) of the July amendment provided that any person aged seventeen or older "who commits an offense which would constitute a felony or a misdemeanor if committed by an adult prior to his or her eighteenth birthday, that *Page 30 
person shall be referred to the court which would have had jurisdiction over the offense if it had been committed by an adult." Section14-1-6(c) (2007 Supp.).
Defendants argue that § 14-1-5, left untouched by the Legislature, and the July amendment to § 14-1-6 are inconsistent inasmuch as the July amendment never "conferred" jurisdiction over defendants' cases to the Superior Court. Defendants argue that the specific "referral" language used in § 14-1-6 (2007 Supp.) supports an inference that the Legislature never intended to give the Superior Court original jurisdiction over seventeen-year-olds committing felonies. In terms of subject matter jurisdiction, the Court finds that the Legislature need not have amended § 14-1-5; although inconsistent, § 14-1-5 and § 14-1-6 (2007 Supp.) may be read harmoniously to effectuate the Legislature's intent. SeeGryguc, 510 A.2d at 939.
If the July amendment, which requires that all seventeen-year-olds committing otherwise criminal conduct is read as defendants suggest — to confer original exclusive jurisdiction on the Family Court — those enumerated § 14-1-5 offenses, which are included by definition in the July amendment, would fall under Family Court jurisdiction, too. The Court has already determined that conduct described in § 14-1-5, the mandatory waiver provision, is not considered to be within the subject matter jurisdiction of the Family Court upon a finding of probable cause. In July, the Legislature determined that other conduct — conduct committed by seventeen-year-olds otherwise amounting to a misdemeanor or felony — also should not fall within Family Court jurisdiction. SeeFalstaff Brewing Corp., 637 A.2d at 1051 (allotting weight to most recent expression of legislative intent). The Legislature intended that any post-conviction confinement of seventeen-year-olds would occur in the ACI rather than at the Training School. The *Page 31 
legislative route in doing so treated all offenses by seventeen-year-olds as criminal offenses. See § 14-1-6 (2007 Supp.). Therefore, the Court finds that the Legislature merely intended to expand those instances in which the Family Court must waive certain individuals — namely, seventeen-year-olds — into a court of competent subject matter jurisdiction. It did not, as defendants suggest, fail to confer jurisdiction over the criminal offenses of seventeen-year-olds.
Despite this finding, the Court takes great interest in defendants' attention to what it calls the "referral" language of the July amendment. Defendants draw this Court's attention to the following excerpt:
 "Any person who has attained the age of seventeen years or older who commits an offense which would constitute a felony or a misdemeanor if committed by an adult prior to his or her eighteenth birthday, that person shall be referred to the court which would have had jurisdiction over the offense if it had been committed by an adult. The court shall have jurisdiction to try that person for the offense committed prior to his or her eighteenth birthday. . . ." Section 14-1-6(c) (2007 Supp.).
Plainly, "to refer" something means "to submit (a matter in dispute) to an authority for
arbitration, decision or examination." The American HeritageDictionary 1467 (4th ed. 2000). The concept of "referral" is used in other provisions of this statutory scheme. Specifically, other sections concerning the movement of juveniles into another tribunal for purposes of adult treatment use similar language.
For example, § 14-1-7.1 requires a hearing prior to the Family Court's discretionary waiver of jurisdiction over a person otherwise considered a child who had committed a criminal offense.[38] See § 14-1-7.1(b) (requiring child be "referred" to court *Page 32 
of competent jurisdiction after waiver hearing); see also Day,911 A.2d at 1050 (commenting that narrow means exist to charge and convict child of crime). Similarly, the juvenile certification statute requires a hearing, and subsequent referral, prior to vesting another court with jurisdiction over a person otherwise deemed a child. See §14-1-7.3(g)(2) (2007 Supp.) (providing that certified child committing otherwise criminal conduct who cannot demonstrate by clear and convincing evidence that he is "amenable to family court facilities" will be "referred" to the court which would normally have jurisdiction over adults behaving identically); see also § 14-1-7.2(c) (requiring person sixteen or older found delinquent for two indictable offenses committed after that age be certified).
Unless the context in which a word is used indicates otherwise, a particular word in another provision that pertains to the same subject matter will be construed in the same sense. Norman J. Singer, 2BSutherland Statutory Construction § 51.02 at 197-98. Because the term "refer" is used consistently throughout the statutory scheme when referring to the treatment of juveniles "outside" the Family Court system, the Court attributes the same meaning to it as found in the July amendment. Therefore, to "refer" implies a transfer of a juvenile's felony case only upon a finding that probable cause exists to craft a criminal complaint in the Superior Court. This Court is hesitant to strip seventeen-year-olds of all Family Court protections, as children have historically been offered special treatment to protect them from the burdening impairments associated with criminal records. In reBernard H., 557 A.2d 864, 867 (R.I. 1989). *Page 33 
Rather than creating an absurd result, the Court finds that a dismissal of these cases would create just the result the Legislature intended. See Gryguc, 510 A.2d at 939 (requiring statutory interpretation comport with legislative intent and policy). It is undisputed that the Legislature desired that seventeen-year-olds be treated as adults for the purpose of confining them in the ACI post-conviction. This goal could be reached by funneling seventeen-year-olds through the Family Court system. Although seventeen-year-olds would find themselves before the Family Court system for purposes of a evaluating a delinquency petition to determine whether probable cause existed to charge a criminal offense, they would still arrive in the respective court of competent jurisdiction. The legislative mandate expressed through § 14-1-6 (2007 Supp.), coupled with the procedures required by the rest of the statutory scheme, would dictate that seventeen-year-olds ultimately be charged, tried, and sentenced before the Superior Court for any felonious conduct.See § 14-1-6 (2007 Supp.) (demonstrating intent to remove seventeen-year-olds from Family Court jurisdiction); § 14-1-40
(prohibiting such activities unless authorized in this chapter); §14-1-5 (providing for hearing prior to juvenile's exclusion from Family Court jurisdiction); see also § 14-1-7 (describing traditional discretionary waiver and certification).
Read in conjunction with other provisions of the statutory scheme, the July amendment implicitly required that a series of events occur before the Superior Court could obtain jurisdiction over the defendants: (1) the filing of a petition alleging delinquent behavior over the seventeen-year-olds committing otherwise criminal behavior; and (2) a hearing before the Family Court to determine probable cause before *Page 34 
any mandatory waiver. As a result, the Superior Court never obtained jurisdiction over defendants allegedly committing felonies between the July and November amendments.
However, in considering defendants' arguments for dismissal, or alternatively, transfer of all cases pending to the Family Court, this Court, mindful of the unique circumstances in which it finds each defendant, will utilize those remedies which reflect the fairness that our judicial system is designed to project. Rather than view defendants' cases "in terms of a complete lack of Superior Court jurisdiction to hear [them] based on [defendants'] minority status," these matters must be evaluated in light of the Family Court's ability to waive jurisdiction over defendants and the adequacy of process through which defendants arrived in this forum. Mastracchio, 546 A.2d at 170.
This Court looks to the Rhode Island Supreme Court's reasoning inState v. Mastracchio for guidance. In that case, Mastracchio made a post-conviction challenge to the Superior Court's jurisdiction based on the absence of any waiver hearing before the Family Court. Mastracchio, twenty-three years old, was charged, tried, and convicted in the Superior Court for a murder that he committed while he was seventeen.Mastracchio, 546 A.2d at 166.
The Court refused to vacate Mastracchio's conviction and dismiss his indictment merely because the Superior Court lacked jurisdiction over Mastracchio at the time of his offense. However, the Court did appreciate that Mastracchio's confinement resulted from procedural malady in light of applicable statutes governing Family and Superior Court jurisdiction. In an effort to balance the interests of justice with Mastracchio's due process rights, the Supreme Court remanded the matter to the Superior Court for a de novo waiver hearing. Id. at 169-70; see also Knott v. Langlois, 102 R.I. 517, 529, *Page 35 231 A.2d 767, 773 (1967) (ordering case remanded to Superior Court forde novo waiver hearing on a nunc pro tunc basis where defendant challenged deficiencies in waiver hearing). Because Mastracchio no longer fell within the jurisdictional age group covered by the Family Court, the Superior Court was the only forum that could be charged with addressing the initial avenue through which Mastracchio's case should have traveled prior to any jurisdictional waiver.[39]Mastracchio, 546 A.2d at 170. Upon remand, the Superior Court justice was required to determine whether Mastracchio could have been waived, and if so, whether waiver would have ensued.[40] Id.; see also Kent v.U.S., 383 U.S. 541, 564-65 (1966) (providing similar relief to defendant). This approach prevented what the Rhode Island Supreme Court commented would be "an inappropriate grant of `drastic relief.'"Mastracchio, 546 A.2d at 170 (citing Kent v. U.S., 383 U.S. at 564, for proposition that vacating conviction and dismissing indictment is a harsh result based on inability of Family Court to review waiver);see also White v. Sowders, 644 F.2d 1177 (6th Cir. 1980) (determining court's discretion better exercised by remand to adult court for denovo waiver hearing where juvenile court option no longer available).
As in Mastracchio, warnings of such "drastic relief" must be acknowledged with respect to the cases before the Court that have proceeded to indictment. If indictments filed against these defendants were dismissed, the Court would be unwinding a procedural trail that enveloped not only alleged victims and their families, but also grand jury participants, the defendants themselves, and the State. In an effort to balance *Page 36 
defendants' concerns with Mastracchio's reasoning, this Court embraces an approach — as have many other courts[41] — set forth in Black v.United States. That approach, which this Court believes most fairly and appropriately addresses defendants' circumstances, is as follows:
 "To assist the [Court] in the disposition of juveniles who challenge their waivers . . ., we recommend the following: If the juvenile has not yet been brought to trial, the indictment should be held in abeyance pending remand to the Juvenile Court for redetermination of waiver; and if jurisdiction is retained by the Juvenile Court, the indictment should be dismissed." Black v. U.S., 355 F.2d 104, 108 (D.C. Cir. 1965) (commenting on juvenile's challenge to absence of counsel at hearing).
It is apparent that defendants' rights were violated by their direct placement in the adult criminal system. It is also apparent that any indicted defendants, unlike the appellant in Mastracchio, still remain within the jurisdictional reach of the Family Court.[42] SeeMastracchio, 546 A.2d at 170 (attaching significance to status as minor or person of majority age for purposes of determining which forumde novo waiver hearing should occur). As a result, any remedial action to ensure that defendant's due process rights are protected must involve a determination by the Family Court. See Black, 355 F.2d at 107
(commenting "waiver question was primarily and initially one for the Juvenile Court . . .").
This Court is aware of one matter — Ryan Greenberg's — that has resulted in the return of an indictment. Accordingly, the Court orders that the Greenberg indictment and any other indictments pending before it as a result of the July amendment be held in abeyance until there is a hearing before the Family Court consistent with this decision. *Page 37 See Black, 355 F.2d at 108. Upon transfer, a judge of the Family Court must determine, whether at the time of the offense, jurisdiction over the particular defendant would have been waived. See State v.Mastracchio, 605 A.2d 489, 494 (R.I. 1992). If waiver was inappropriate under the circumstances, meaning that no probable cause existed to believe defendant committed the offense charged, then that defendant's indictment must be dismissed by the Superior Court.[43] If, however, the Family Court should determine the waiver order would have been proper from the outset, the Superior Court may proceed.[44] SeeBerard, 121 R.I. at 555-60, 401 A.2d at 450-453 (recognizing Family Court may decline jurisdiction as provided by Legislature's automatic waiver).
Conversely, any matters concerning defendants that have not materialized into an indictment, but remain in the Superior Court as criminal complaints or informations *Page 38 
resulting from the July amendment, shall be dismissed.[45] This Court finds that dismissal of these matters would not effectuate the drastic results associated with the dismissal of pending indictments. The Greenberg indictment, which is the product of a lengthy grand jury proceeding, consisting of approximately twenty witnesses and thirty exhibits, unquestionably illustrates the drastic consequences and inherent unfairness that would result from a dismissal. Moreover, this approach respects the constancy of Rhode Island precedent concerning the limitations of Family Court jurisdiction.
 III Conclusion
The Legislature's short-lived decision to subject seventeen-year-olds to Superior Court jurisdiction was constitutional in all respects. The manner in which this decision was implemented, however, failed to consider the entire statutory scheme conferring jurisdiction upon the Family Court. In an effort to respect the juvenile justice statutory scheme, afford appropriate due process safeguards to all defendants affected, extend a modicum of fairness and consideration to those implicated in the grand jury process, and *Page 39 
most importantly, serve the ends of justice for all concerned, the Court dismisses all complaints and informations filed in the Superior Court as a result of the July amendment, and holds the Greenberg indictment and any other returned indictments in abeyance pending waiver hearings in the Family Court in accord with this decision.
[2] This quote is cited in its original form for historical accuracy purposes only. The Court today interprets the quotation to include women and men.
[3] The Court notes that among these "kids" are seventeen-year-olds charged with assault with a dangerous weapon, first degree robbery, second degree murder, and other serious criminal offenses.
[4] In the legislative council's explanation of the proposed appropriations for the support of the state fiscal year ending June 30, 2008, Article 22 was described as "chang[ing] various statutes to limit Department of Children Youth and Families jurisdiction and services to youth under the age of eighteen."
[5] Governor Donald L. Carcieri made a statement regarding his veto of HB 5300 per section 14 of Article IX of the Rhode Island Constitution; however, the Governor did not specifically comment on the provisions affecting § 14-1-6 (2002 Reenactment).
[6] The stated purpose of the act read as follows: "[to] make changes to the conditions under which family court retains jurisdiction of those reaching the age of eighteen (18)."
[7] The operation and refusal charges were filed by the Rhode Island Department of Environmental Management on July 18, 2007. The possession charge was filed on July 27, 2007 by the Barrington Police Department.
[8] Greenberg's date of birth is May 19, 1990.
[9] Neither the motion on behalf of the John Doe defendants, nor the motion made by defendant Greenberg has specifically referenced the rule by which dismissal or transfer is sought.
[10] See U.S. Const. amend. XIV; see also R.I. Const. art. I, § 2. Defendants' have not specifically addressed an equal protection argument with respect to the July amendment.
[11] See Santurri v. DiPietro, 818 A.2d 657, 661 (R.I. 2003) (citingDevane v. Devane, 581 A.2d 264, 264 (R.I. 1990) (per curiam)) (prohibiting trial court's sua sponte examination of statute's constitutionality where litigants had not lodged a constitutional challenge).
[12] See State v. Lead Industries Ass'n, Inc., 898 A.2d 1234, 1239
(R.I. 2006) (quoting In re Court Order Dated October 22, 2003,886 A.2d 342, 350 n. 7 (R.I. 2005) (stating courts are "quite reluctant to reach constitutional issues when there are adequate non-constitutional grounds upon which to base our rulings").
[13] Defendants proffer that Family Court jurisdiction, when retained, will have more pronounced benefits for juveniles in terms of rehabilitation, education, mental health, and future community involvement.
[14] See State v. Mastracchio, 546 A.2d 165, 169 (R.I. 1988) (holding juveniles have no absolute right to avoid the adult penal system);State v. Behl, 564 N.W.2d 560, 1997 Minn. LEXIS 373, at * 20 (Minn. May 29, 1997) (finding "no person, regardless of age, has a fundamental right to juvenile adjudication); State v. Annala, 484 N.W.2d 138, 144
(Wis. 1992) (denying "fundamental right to be treated as a juvenile" exists).
In urging this Court to find that defendants' fundamental liberty interest is at stake as a result of this legislation, defendants point to Morris v. D'Amario, 416 A.2d 137 (R.I. 1980). Their reliance onMorris, however, is misplaced. The Morris Court found that a juvenile's liberty interest is affected when he or she is detained without bail prior to a delinquency hearing. Upon finding such a liberty interest, it applied strict scrutiny in evaluating — and approving — the procedures and protections employed by the state while a juvenile awaited his or her hearing. Those facts are inapposite to the instant matter. This Court recognizes that § 14-1-6 indeed concerns a juvenile's liberty interest. Nevertheless, the connection between § 14-1-6's jurisdictional focus and the liberty interest that might ultimately be at stake in adult criminal proceedings is too attenuated to constitute a fundamental right.
[15] See Berberian v. Petit, 118 R.I. 448, 453-54, 374 A.2d 791, 794
(1977) (determining age is not a suspect classification); see alsoCherenzia v. Lynch, 847 A.2d 818, 823 (R.I. 2004) (stating suspect legislative classifications include race, alienage, or national origin).
[16] Defendants themselves, through counsel, conceded that, had the proposed savings materialized, this constitutional challenge would not have arisen.
[17] Section 14-1-6(b) (2007 Supp.) read as follows:
 "In any case where the court shall not have acquired jurisdiction over any person prior to the person attaining the age of seventeen years by the filing of a petition alleging that the person had committed an offense prior to the person attaining the age of seventeen years which would be punishable as a felony if committed by an adult, that person shall be referred to the court which would have had jurisdiction over the offense if it had been committed by an adult. The court shall have jurisdiction to try that person for the offense committed prior to the person attaining the age of seventeen years and, upon conviction, may impose a sentence not exceeding the maximum penalty provided for the conviction of that offense."
Section 14-1-6(c) (2007 Supp.) read as follows:
 "Any person who has attained the age of seventeen years or older who commits an offense which would constitute a felony or a misdemeanor if committed by an adult prior to his or her eighteenth birthday, that person shall be referred to the court which would have had jurisdiction over the offense if it had been committed by an adult. The court shall have jurisdiction to try that person for the offense committed prior to his or her eighteenth birthday and, upon conviction, may impose a sentence not exceeding the maximum penalty provided for the conviction of the offense."
Essentially, the July amendment ensures that seventeen-year-olds will be subject to blanket Superior Court jurisdiction, regardless of age at which their prohibited felonious conduct occurred, so long as the petition was filed when they were seventeen years of age. See §14-1-6(b) (2007 Supp.). Additionally, any offenses committed by seventeen-year-olds which would be considered misdemeanors or felonies if committed by adults would also be subject to District or Superior Court jurisdiction. See § 14-1-6(c) (2007 Supp.).
Although defendants have not argued that the July amendment, by itself, violates equal protection guarantees, its validity is integral to the resolution of this matter. Those seventeen-year-old individuals comprising the "gap" population fell within Superior Court jurisdiction as a result of this particular enactment.
[18] Section 14-1-6(b), prior to the July amendment, provided as follows:
 "In any case where the court shall not have acquired jurisdiction over any person prior to the person's eighteenth birthday by the filing of a petition alleging that the person had committed an offense, but a petition alleging that the person had committed an offense which would be punishable as a felony if committed by an adult has been filed before that person attains the age of twenty-one (21) years of age, that person shall, except as specifically provided in this chapter, be subject to the jurisdiction of the court until he or she becomes twenty-one (21) years of age, unless discharged prior to turning twenty-one (21)." Section 14-1-6 (2002 Reenactment).
Section 14-1-6 (c), prior to the July and November amendments, in relevant part, read as follows:
 "In any case where the court shall not have acquired jurisdiction over any person prior to the person's twenty-first birthday by the filing of a petition alleging that the person had committed an offense prior to the person's eighteenth birthday which would be punishable as a felony if committed by an adult, that person shall be referred to the court which would have had jurisdiction over the offense if it had been committed by an adult." Section 14-1-6 (2002 Reenactment)
[19] State v. J.S., 469 N.E.2d 1090, 1094 (Ill. 1984) (recognizing legislature's ability to create statutory classifications among seventeen and eighteen-year-olds where rationally related to legitimate state interest); see also State v. Mastracchio, 546 A.2d 165, 169 (R.I. 1988) (recognizing "[legislature] could have chosen to treat all youths above fourteen years of ages as adults," while examining §§ 14-1-6
through 14-1-7.1) (citing State v. Berard, 121 R.I. 551, 556,401 A.2d 448, 453 (1979)).
[20] With regard to the July amendment, defendants presented testimony and offered exhibits that identified the General Assembly's sole purpose in enacting the July amendment as financial. Specifically, defendants assert that conversations at the March 28, 2007 Finance Committee hearing demonstrate that the sole reason for amending § 14-1-6 in July 2007 was to provide savings to the state.
[21] The governor must present the General Assembly with an annual state budget. R.I. Const. art. IX, § 15.; see also G.L. 1956 § 35-3-7
(outlining budget submission to legislature). The House of Representatives and the Senate must consider and pass the bill, each having an opportunity to amend it, pursuant to § 35-3-9 through §35-3-12 of the General Laws. Ultimately, the bill returns to the governor's hands for signature; however, if altered or disapproved by the governor, the general assembly may still enact it with a three-fifths vote in each house. R.I. Const. art. IX, § 14.
[22] Defendants argue that the Legislature was required to perform due diligence prior to enacting a particular amendment. Specifically, defendants argue that the General Assembly should have been required to investigate the specific housing, security, and program impacts on the ACI. However, they provide no support for this proposition.
[23] Defendants point to Long v. Robinson, 316 F. Supp. 22 (D.C. Md. 1970), and Salsburg v. Maryland, 346 U.S. 544 (1954), for the proposition that the Legislature "is presumed to have acted . . . upon full knowledge of the facts." However, defendants fail to recognize that these cases also provide that a statutory classification will be upheld if "any state of facts reasonably may be conceived to justify it."Long, 316 F. Supp. at 26 (citations and internal quotations omitted);Salsburg, 346 U.S. at 554 n. 9 (citations and internal quotations omitted).
[24] Section 14-1-6(b) of the November amendment provides as follows:
 "In any case where the court shall not have acquired jurisdiction over any person prior to the person's eighteenth birthday by the filing of a petition alleging that the person had committed an offense, but a petition alleging that the person had committed an offense which would be punishable as a felony if committed by an adult has been filed before that person attains the age of nineteen (19) years of age, that person shall, except as specifically provided in this chapter, be subject to the jurisdiction of the court until he or she becomes nineteen (19) years of age, unless discharged prior to turning nineteen (19)." P.L. 2007, ch. 532, § 1.
Section 14-1-6(c) of the November amendment provides as follows:
 "In any case where the court shall not have acquired jurisdiction over any person prior to the person attaining the age of nineteen years by the filing of a petition alleging that the person had committed an offense prior to the person attaining the age of eighteen years which would be punishable as a felony if committed by an adult, that person shall be referred to the court which would have had jurisdiction over the offense if it had been committed by an adult. The court shall have jurisdiction to try that person for the offense committed prior to the person attaining the age of eighteen years and, upon conviction, may impose a sentence not exceeding the maximum penalty provided for the conviction of that offense. P.L. 2007, ch. 532, § 1.
Subsection (c) indicates that otherwise felonious conduct committed by seventeen-year-olds will not be prosecuted in Superior Court unless the petition alleging such conduct was filed when the person was at least nineteen years of age. Subsection (b) indicates that eighteen-year-olds, if charged with otherwise felonious conduct occurring while they were seventeen, will remain in Family Court jurisdiction if the petition was filed while the individual was still aged eighteen.
[25] Notably, defendants direct the Court's attention to a September 2007 hearing before the Senate Finance Committee, which illustrates the Legislature's misconception of the alleged savings.
[26] In the second round of amendments to § 14-1-6, the Legislature excluded from adult court jurisdiction offenses that would be considered misdemeanors if committed by an adult. See P.L. 2007, ch. 532, § 1 (setting forth § 14-1-6(c)).
[27] In fact, other legislative changes accompanied the November amendment to § 14-1-6. Section § 14-1-6.1 assures, where a court shall have obtained jurisdiction over a seventeen-year-old pursuant to the July amendment, his or her records are to be maintained as though they were Family Court records. See P.L. 2007, ch. 532, § 2. This includes a sealing of the records of such proceedings upon a final disposition of "no information, dismissal or not guilty or upon the completion of any sentence, probation, and/or parole imposed therein." Id. Additionally, § 14-1-6.2 provides that courts "shall consider placing [a] juvenile in the least restrictive appropriate facility or program" possible when it obtains jurisdiction over a juvenile pursuant to chapter 1 of title 14, governing Family Court proceedings. See id.
[28] See Jeffrey B. Pine, Juvenile Waiver in Rhode Island, 2 Roger Williams U.L. Rev. 257, 269-70 (1997) (compiling various state statutes permitting adult treatment of certain juvenile offenders).
[29] See § 14-1-6 (1981 Reenactment) (proffering eighteen years of age as cutoff); § 14-1-6 (1969 Reenactment) (providing twenty-one years as cutoff age). The Supreme Court deemed the 1981 Reenactment of § 14-1-6
ineffective in changing the maximum age over which the Family Court could exercise jurisdiction over an individual already within the Family Court system. See In re P., 451 A.2d 274, 277 (R.I. 1982). Therefore, twenty-one has been the traditional age at which an individual's existence in the Family Court system terminates.
[30] It should be noted that the Court in Day did not distinguish between "mandatory" waivers, per § 14-1-5, or "discretionary" waivers, per § 14-1-7.1.
[31] The precise language of § 14-1-5 provides as follows:
 "(1) Concerning any child residing or being within the state who is: (1) delinquent; (ii) wayward; (iii) dependent; (iv) neglected; or (v) mentally disabled, except that any person aged seventeen (17) years of age or older who is charged with a delinquent offense involving murder, first degree sexual assault, or assault with intent to commit murder, shall not be subject to the jurisdiction of the family court if, after a hearing, the family court determines that probable cause exists to believe that the offense charged has been committed and that the person charged has committed the offense. The family court shall conduct a hearing within ten (10) days of the arraignment on the charge(s), unless the time for the hearing is extended by the court for good cause shown. . . ." Section 14-1-5 (emphasis added).
[32] "Adult" typically refers to a person who is eighteen years of age or older. See § 14-1-3(1). However, the definition of "adult" set forth in § 14-1-3(3) also has a caveat. "Adult" also includes "any person seventeen (17) years of age or older who is charged with a delinquent offense involving murder, first degree sexual assault, first degree child molestation, or assault with intent to commit murder, and that person shall not be subject to the jurisdiction of the Family Court as set forth in §§ 14-1-5 and 14-1-6 if after a hearing, the family court determines that probable cause exists to believe that the offense charged has been committed and that the person charged has committed the offense." Id.
[33] The Day Court noted that the Family Court could adjudicate the actions of children, which if committed by adults, would be criminal. However, these delinquency determinations would be civil, rather than criminal, in nature. Day, 911 A.2d at 1049 n. 8. Section § 14-1-5
eliminates that result with respect to certain offenses via § 14-1-5 by excluding them from Family Court jurisdiction.
[34] The 1969 and 1981 reenactments pertaining to § 14-1-6 provided cutoffs for Family Court jurisdiction. Twenty-one has been the traditional age over which an individual was permitted to remain within the Family Court system.
[35] Minimal alterations to the 1990 public laws were reported to have been made to § 14-1-6 during the 1994 Reenactment.
[36] This blanket applicability of extending jurisdiction over individuals until they turned twenty-one was limited by other sections of the chapter governing Family Court proceedings. See § 14-1-6(a) (1994 Reenactment).
[37] See generally § 14-1-6 (2000 Reenactment) (setting forth content similar to 1994 Reenactment of same section); § 14-1-6 (2002 Reenactment) (providing minimal textual changes to existing law).
[38] See Juv. Pro. Rule 13. In relevant part, Rule 13 states as follows: "(f) Mandatory Transfer of Jurisdiction. If, after notice and hearing, the court shall determine that a child is subject to the prosecution as an adult pursuant to G.L. 1956, § 14-1-7.1, the court shall enter an order transferring jurisdiction over such child to the appropriate court."
The reporter's notes indicate that section (f) implements § 14-1-7.1, which also transfers to an appropriate court jurisdiction over children at least sixteen years of age who have been adjudged twice delinquent by reason of indictable offenses after attaining the age of sixteen.
[39] Section 14-1-7 (1981 Reenactment) formerly provided that children sixteen or older charged with an offense which would be indictable as an adult would be subject to waiver by a Family Court justice upon "full investigation."
[40] On remand, the Superior Court decided that Mastracchio, at the time of his offense, was "waivable," and if charges had been brought at that time, jurisdiction over him would have been waived by the Family Court. See generally State v. Mastracchio, 605 A.2d 489 (1992) (affirming Superior Court's decision).
[41] See generally Kent v. United States, 383 U.S. 541 (1966) (recognizing "remedy" created by Black Court for procedural mishaps in discretionary waiver proceedings); see also Knott v. Langlois,102 R.I. 517, 529, 231 A.2d 767, 773 (1967) (citing Kent for providing solution to disputes regarding juvenile waiver).
[42] Nineteen is the age beyond which the Family Court cannot exercise jurisdiction. See P.L. 2007, ch. 532, § 1.
[43] See Day, 911 A.2d at 1054 (stating "there is no limitation to the charges that may be lodged against the child in the adult court, as long as those charges spring from the nucleus of operative facts upon which the Family Court waiver of jurisdiction was based").
[44] Proceedings in the Superior Court will not be barred by the operation of § 43-3-23, the general savings provision. Section 43-3-23
becomes effective where the Legislature repeals a "statute for any offense committed" and the Legislature does not expressly provide that pending actions under the former statute should be preserved.See § 43-3-23; see also State v. Mullen, 740 A.2d 783, 785 (R.I. 1999) (describing § 43-3-23 as applicable to "criminal prosecutions pending at the time of the repeal of any penal statute").
Since the provision at issue in this case is the July amendment to § 14-1-6, and it neither describes in detail proscribed criminal conduct, nor sets forth the applicable punishment for any specific offense, a protracted discussion of § 43-3-23 is not warranted.Compare Day, 911 A.2d at 1048 n. 6 (describing §§ 14-1-7 and 14-1-7.1
waiver provisions as statutes that are civil in nature) with State v.Souza, 456 A.2d 775 (R.I. 1983) (vacating conviction of defendant for crime no longer existing since repeal and subsequent reenactment of statute altered elements of crime) and State v. Fletcher, 1 R.I. 193
(1846) (describing savings clause applicability to statute involving the distribution of a penalty associated with a statute prohibiting unlicensed sale of liquor). Section 43-3-23 is inapplicable to the instant matter.
However, even if § 14-1-6 was construed as a penal statute, and therefore, subject to the operation of § 43-3-23 in proper circumstances, this matter is not one of those circumstances. Although Family Court jurisdiction was expanded by the November amendment, the Legislature did not desire to repeal the July amendment with respect to those individuals over which the court obtained jurisdiction as a result of that legislation. The General Assembly specifically addressed the continued application of the July amendment to cases arriving at this Court because of its operation. See P.L. 2007, ch. 532, § 2 (delineating treatment of records via § 14-1-6.1 "[i]n any case where a court shall have obtained jurisdiction of a juvenile having attained the age of seventeen (17) years pursuant to [the July amendment]"); see also Fox v.Fox, 115 R.I. 593, 597, 350 A.2d 602, 604 (1976) (recognizing statutes that change jurisdiction [such as the November amendment] are extremely reluctantly applied retroactively).
[45] A trial court has an inherent right to dismiss actions over which it does not have jurisdiction. See In re Stephanie B., 826 A.2d 985, 993
(R.I. 2003) (stating "personal jurisdiction is an unwavering requirement of our jurisprudence"); Sunny Day Restaurant, Inc. v. Beacon Restaurant,Inc., 103 R.I. 707, 708, 241 A.2d 295, 296 (R.I. 1968) (dismissing complaint which sought determination of issues which were in the exclusive domain of another body). The Court will dismiss defendants' cases without prejudice as these matters are prematurely before this Court. Accordingly, proceedings may be instituted in the Family Court to address these matters.
Defendants' rights will not be violated by any new proceedings before the Family Court. "The general rule established by the preponderance of judicial opinion and the best considered cases is that when a person has been placed on trial on a valid indictment or information before a court of competent jurisdiction, has been arraigned, and has pleaded, and a jury has been impaneled and sworn, he is in jeopardy, but that until these things have been done, jeopardy does not attach." See State v.Alexander, 115 R.I. 491, 348 A.2d 368, 370 (1975) (citations omitted).
Additionally, the Court finds that, based on the results reached through this decision, it need not address in detail defendants' contentions regarding § 14-1-28, describing the transfer of a juvenile to the Family Court from another forum. Because a de novo waiver hearing shall be provided in the Family Court for defendants whose indictments remain in abeyance in the Superior Court, the Court has inherently addressed the problem of "minority" as it concerned defendants regarding § 14-1-28.